**Ray HIGHTOWER, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 1134–87, 1135–87.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1991.

Lynn Ingalsbe, Abilene, for appellant.

James Eidson, Dist. Atty., Jorge A. Solis, Sp. Prosecutor, Abilene, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

On February 1, 1986, appellant, Ray Hightower, Jr., abducted a six-year-old girl who was playing in the backyard of her home in Abilene. Appellant drove the child to a secluded area south of the city where he sexually assaulted her. After the assault appellant released the little girl near a rural home.

The jury convicted appellant of two offenses—aggravated kidnapping (V.T.C.A., Penal Code, Section 20.04) and indecency with a child (V.T.C.A., Penal Code, Section 21.11). The jury also found allegations made in two enhancement paragraphs to the indictments to be true and assessed punishment at life for each offense. Appellant appealed.

In the Court of Appeals, appellant claimed that (1) his Sixth Amendment right to confrontation was violated by the trial court's admission of the child's testimony pursuant to Article 38.071, Section 3, of the Code of Criminal Procedure; (2) that his Sixth Amendment right to effective assistance of counsel was violated by the trial court's refusal to allow him to be personally present during his attorney's cross-examination of the child; and (3) the child's testimony was improperly admitted into evidence since the trial court did not comply with the "mandatory predicate provisions" of Article 38.071, Section 3. The Court of Appeals held that appellant's Sixth Amendment rights had not been violated when the child testified before the jury via a closed-circuit television system and that although the procedure utilized by the trial court in transmitting the child's testimony to the courtroom may not have been in strict compliance with Article 38.071(3), such did not cause appellant any harm. See *Hightower v. State*, 736 S.W.2d 949, 951–953 (Tex.

App.–Eastland 1987). Thereafter, appellant filed his petition for discretionary review contesting the Court of Appeals' holdings. We granted the petition and now affirm.

Prior to any testimony being heard by the jury, the State moved to present the testimony of the child via a closed-circuit television system. The motion was based upon Section 3 of Article 38.071 of the Texas Code of Criminal Procedure.[1] The trial court, without hearing evidence and without making findings as to the need for the special procedure, granted the State's motion over appellant's objections. Thereafter, the State began its case in chief during which the court reporter, the judge, the child witness and the attorneys for the State and appellant, went into the jury room along with the operator of the closed-circuit television system. The child's live testimony was transmitted from the jury room into the courtroom. There the jury and appellant viewed the child and heard her testimony on monitors. The judge gave specific instructions to appellant and the bailiff that appellant could interrupt the questioning any time he wanted to confer with his attorney. Appellant's attorney was also assured that he could put his questioning on hold and consult his client any time he wished to do so.

## THE RIGHT TO CONFRONT THE CHILD WITNESS

■ The Confrontation Clause of the Sixth Amendment to the United States Constitution provides in part that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." See also *Delaware v. Fensterer*, 474 U.S. 15, 22, 106 S.Ct. 292, 295–296, 88 L.Ed.2d 15 (1985) (per curiam); *Ohio v. Roberts*, 448 U.S. 56, 69, 100 S.Ct. 2531, 2540, 65 L.Ed.2d 597 (1980); *Davis v. Alaska*, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Pointer v. Texas*, 380 U.S. 400, 406–407, 85 S.Ct. 1065, 1069–1070, 13 L.Ed.2d 923 (1965); 5 Wigmore, *Evidence* § 1395, p. 150 (Chadbourne rev. ed. 1974).

1. In 1983, the Legislature enacted Article 38.071, V.A.C.C.P., which provided in Section 3 that:

"The court may, on the motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys may question the child. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant."

After its enactment, the Article went through several alterations. In its current form, Section 3 provides:

"On its own motion or on the motion of the attorney representing the state or the attorney representing the defendant, the court may order that the testimony of the child be taken during the trial in a room other than the courtroom and be televised by closed-circuit equipment in the courtroom to be viewed by the court and the finder of fact. To the extent practicable, only the judge, the court reporter, the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys and the judge may question the child. To the extent practicable, any persons necessary to operate the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child and to communicate contemporaneously with his attorney during periods of recess or by audio contact, but the court shall attempt to ensure that the child cannot hear or see the defendant. The court shall permit the attorney for the defendant adequate opportunity to confer with the defendant during cross-examination of the child. On application of the attorney for the defendant, the court may recess the proceeding before or during cross-examination of the child for a reasonable time to allow the attorney for the defendant to confer with defendant."

Appellant claims that this Clause was violated by the trial court's special procedure. We disagree.

In *Maryland v. Craig*, —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court of the United States determined that Maryland's statutory procedure allowing the use of a one-way, closed-circuit television system for the receipt of testimony by a child was not violative of the Sixth Amendment's Confrontation Clause.[2] Specifically, the *Craig* Court held that:

> "Given the State's traditional and transcendent interest in protecting the welfare of children and buttressed by the growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court, we will not second guess the considered judgment of the Maryland Legislature regarding the importance of its interest in protecting child abuse victims from the emotional trauma of testifying. Accordingly, we hold that if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify use of a special procedure that permits a child in such cases to testify at trial against the defendant in the absence of face-to-face confrontation with the defendant." —— U.S. at ——, 110 S.Ct. at 3168–3169, 111 L.Ed.2d at 685 (citations omitted).

Recently this Court interpreted *Craig* to mean that before a trial court is allowed to utilize a closed-circuit system of transmitting a child's testimony into the courtroom, the court must hear evidence and make a case-specific determination that:

> "*First*, [that] use of the one-way closed-circuit procedure is necessary to protect the welfare of the particular child wit-

ness who seeks to testify. *Second,* the trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. *Third* ..., the trial court must determine that the emotional distress suffered by the child witness in the presence of the defendant is 'more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify.' " *Gonzales v. State,* 818 S.W.2d 756, 762 (Tex.Cr.App.No 365–90 delivered September 18, 1991), at slip op. p. 10 (citations and footnotes omitted).

If the trial court makes these findings, then "the Confrontation Clause does not prohibit the use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Craig,* —— U.S. at ——, 110 S.Ct. at 3169, 111 L.Ed.2d at 686.

■ The trial court did not have benefit of the *Craig* opinion before it proceeded under Article 38.071(3). As mentioned above, none of the findings required by *Craig* were in the record on appeal. Such findings are not required by Article 38.071(3); such findings, however, are constitutionally required. The State, obviously aware of this deficiency filed a motion in this Court requesting that we abate the appeal and allow the trial court to make case-specific findings as to the necessity of the closed-circuit television system. We granted the motion and ordered the trial court to conduct a hearing and enter findings of fact and conclusions of law.

The trial court complied with our order and after conducting the hearing he made

---

**2.** Pursuant to the Maryland statute, the trial court must first find that testimony by the child in the courtroom will result in the child suffering "serious emotional distress such that the child cannot reasonably communicate." If so found, the child, the prosecutor, and the defense attorney withdraw to another room where the child is examined and cross-examined. The judge, the jury and the defendant remain in the courtroom where the child's testimony is televised via a closed-circuit one-way television system. The child cannot see the defendant but the defendant can see the child and remains in electronic communication with his counsel throughout the procedure. Objections are made and ruled on as if the witness were in the courtroom. See Maryland Courts & Judicial Procedure Code Annotated § 9–102 (1989).

the following findings in accordance with *Craig:*

"1) The child witness, S\_\_\_\_\_ L\_\_\_\_\_ N\_\_\_\_\_, required special protection from testifying in the presence of the defendant, Ray Hightower, Jr,:

"2) The closed-circuit television procedure which was utilized was necessary to protect the welfare of the child witness;

"3) the child witness had undergone serious emotional trauma which stemmed from that offense itself;

"4) The child witness would have suffered such serious additional emotional distress that the child would not have been able to reasonably communicate;

"5) The child witness would have been traumatized by the presence of the defendant and not merely by the courtroom situation itself;

"6) The emotional distress suffered by the child witness in the presence of the defendant would have been more than mere nervousness or a reluctance to testify; and

"7) the procedure utilized required that the child witness testify under oath, subject to full cross-examination, and she was observed as she testified by the judge, jury, defendant, and defense attorney. In addition, the defendant and his attorney were informed that they could stop the testimony at any time to communicate with each other." [3]

■ These findings are supported by the record. After the attack on her child, the mother contacted the Rape Crisis Center in Abilene and requested assistance. Lynn Monkerud began working with the child and met with her on a weekly basis from February until July of 1986. She found that the child was "very shy, very reserved" and had been severely traumatized by the attack. In her opinion, the child would not have been able to testify. "She was very very afraid" of appellant. Monkerud recalled that she had told the Assistant District Attorney that they had at-

---

**3.** Although the trial court did not make any specific written findings at the time he granted the State's motion to proceed under Article 38.-071(3), the record from the hearing on remand reflects that the judge had deliberated about the matter for approximately two months prior to granting the motion. As the judge stated at the hearing on remand:

> "But later I did view the video. And of course, [the defense and prosecuting attorneys], both in my chambers discussed the basic background and facts of the case and the reluctance of the witness and all of these things. And of course it was obvious to the Court that the child had undergone a serious and stressful type emotional situation . . ., just on the tapes and—and all of it together. But any rate . . ., after . . ., talking to the attorneys and then viewing the videos and everything combined . . ., I determined in my mind that . . . the child had already undergone and was undergoing at that time in my humble opinion a stressful emotional—and undergoing a lot of stress. And to me, you know to deny the motion and force the child into the courtroom on a face-to-face confrontation with this Defendant . . ., in my opinion, she would have never uttered a word. In my opinion, it never would have been tried, because all it would have done was enhanced and aggravated the condition she already had.

The trial court also indicated at the hearing on remand that several factors went into granting the State's motion to proceed under Article 38.-071(3):

> "And of course, as far as findings [are] concerned . . ., I've determined . . . that the testimony by the child witness in the courtroom would result in the child suffering serious emotional distress to the extent that the child would not, and in all probability would not communicate. And further, that it was very obvious to the Court that the child had undergone serious emotional trauma. And to make her come in and not grant the State's oral motion, uh, would have forced her to come in the courtroom and that would have just made her worse than what she was to start with. And for that reason, that was my thought[ ] at that time. . . . I found it before, or otherwise I wouldn't have granted the motion. [The prosecutor] filed a request . . . to try it under that Section 38.071. And after I considered it for about a month, I granted the oral motion. . . . Of course, as far as findings, just like I said, uh, if I hadn't found that the child had a lot of emotional stress and under emotional stress, and . . . to force her to come into the courtroom—like I say . . ., in my humble opinion, based on my observations of the child and all the conversations I had with you and the District Attorney, the case would have never been tried. Period. And that's what I'm finding at this time. I found it before. That's the reason I granted the motion."

tempted to get the child to talk by allowing her to sit on her father's lap but this had not proven successful.

The Assistant District Attorney, Jorge Solis, testified that he had ten years' experience in prosecuting cases concerning assault on children. He testified at the hearing that "I've put on children before and this went beyond just the normal six-year-old child who is afraid." He felt that the child would have been unable to testify in a courtroom and that it was in the best interest of the child that he asked the court to proceed under Article 38.071(3).

When we apply the *Craig* criteria to the case at bar, we find that the trial court made case-specific findings supported by evidence that the closed-circuit system was needed to protect the child's welfare, that absent such a procedure the child would be incapable of testifying in front of appellant, and that if the child were forced to testify in front of appellant such would add to or cause "serious emotional trauma" to the child. Consequently, we hold that use of the closed-circuit system did not offend the United States Constitution. We take into account that, albeit in a room away from appellant, the child's testimony was subject to rigorous adversarial testing. She testified under oath, was subject to cross-examination, and was observed by the judge, the jury and appellant. See *Craig*, —— U.S. at ——, 110 S.Ct. at 3169, 111 L.Ed.2d at 686; *Gonzales*, 818 S.W.2d at 764.

■■■ In *Craig*, the Supreme Court found that the State must "make an adequate showing of necessity [such that] the state interest in protecting the child witness from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure...." —— U.S. ——, 110 S.Ct. at 3169, 111 L.Ed.2d at 685. And in *Coy v. Iowa* the Court intimated that exceptions to face-to-face confrontation "would ... be allowed only when necessary to further an important public policy." 487 U.S. 1012, 1021, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988). In response to *Coy* and *Craig*, we recognize that among the public policy considerations supporting the trial court's ac-

tions is a stated legislative concern for protecting children under circumstances like the one before us. Article 38.071(3) is clear proof to this Court that the Legislature has recognized the importance of protecting young children from the turmoil associated with having to give testimony in a courtroom and has acted to eliminate or alleviate that trauma within the parameters of the Constitution.

When the Legislature amended Article 38.071 in 1987 it added the following statement:

"Purpose. The purpose of this statute is to establish procedures for the taking of testimony of child complainants in certain criminal prosecutions, while preserving the constitutional rights of defendants....

"The state interest concerns the children who are victims of sexual offenses and who are subjected to the intimidating nature of confronting the defendant and the pressures related to the ordinary participation of the victim in a courtroom trial. *In addition, because a child is more likely than an adult to have a difficult time recovering from the trauma related to an offense,* it is in the state's interest that the child victim provide testimony as early and as infrequently as possible.

"Finally, it is in the interest of all parties that sufficient discretion be afforded courts hearing such cases, so that the competing interest can be balanced in an individualized manner. By providing the changes included in this Act the legislature believes that the courts will have a sufficiently flexible system that properly protects the rights of defendants while reducing the deleterious effects of the criminal justice system on certain child sex crime victims." [Emphasis added.]

Thus, Article 38.071 denotes the required generalized showing of public policy necessary under *Coy* to justify utilization of the closed-circuit television system sanctioned in *Craig*. Our holding today is based on the unquestionable state goals of seeking to protect a child witness from the trauma associated with giving testimony in open

court and the trial court's case-specific determination that a certain procedure akin to that used in *Craig* was necessary to protect the child witness in the case before us.

Accordingly, we overrule appellant's first ground for review.

## THE RIGHT TO EFFECTIVE REPRESENTATION

■ For the same reasons outlined above we also reject appellant's contention that his Sixth Amendment right to effective assistance of counsel was denied when he was not allowed to be in the same room with his attorney during his attorney's cross-examination of the child. Although this precise issue was not before the *Craig* Court, after it determined that face-to-face confrontation would yield at times to the exigencies of the situation, the Supreme Court noted that:

> "This interpretation of the Confrontation Clause is consistent with our cases holding that other Sixth Amendment rights must also be interpreted in the context of the necessities of trial and the adversary process. [Citations omitted.] *We see no reason to treat the face-to-face component of the confrontation right any differently, and we think it would be anomalous to do so. Craig*, [—— U.S. at ——] 110 S.Ct. [at 3166] 111 L.Ed.2d at 681, citing *inter alia, Perry v. Leeke*, 488 U.S. 272, 280–285, 109 S.Ct. 594, [599–602] 102 L.Ed.2d 624 (1989), for the proposition that the 'right to effective assistance of counsel is not violated where trial judge prevented testifying defendant form conferring with counsel during a short break in testimony.' "

Cf. *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (trial court's order directing defendant not to consult with attorney during an overnight recess violated the Sixth Amendment right to effective representation). If it would be

anomalous to interpret the Sixth Amendment's Confrontation Clause differently than its guarantee of effective assistance of counsel, we must conclude that here where appellant's Sixth Amendment rights to confrontation were not violated, the special procedures used which permitted full consultation (whether the prerogative was ever exercised) also did not offend the Sixth Amendment's right to effective assistance of counsel.[4] Indeed, there is no indication in the record how defense counsel's abilities or strategies during cross-examination were altered or impaired by having to halt the proceedings to consult with his appellant. Moreover, our examination of the record fails to reveal how appellant was adversely effected by the procedure.

Appellant's second ground for review is overruled.

## THE STATUTORY PROVISIONS

■ Finally, appellant asserts that the procedural requirements of Article 38.-071(3) were not followed. He points out that the judge and the court reporter were both in the video room at the time of the closed-circuit telecast and that the operator was not hidden from the child's view as required by the statute. Because these "mandatory" requirements were not followed, appellant contends the testimony should have been suppressed. We do not agree.

Considering the language used under the old statute, ("any person whose presence would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony") we agree with the Court of Appeals that such may be read to allow the judge and court reporter to remain in the room as long as such is "in the best interest of the child." We recognize that the statute applicable to appellant's trial employed mandatory language[5]; however, even if we

---

4. The Maryland statute at issue in *Craig* provided for the defendant to communicate with his attorney "by any appropriate electronic method." Section 9–102(b)(3) of the Courts and Judicial Proceedings (1989). We observe that the

*Craig* Court determined that given a valid, case-specific finding of necessity, proceeding under this statute was constitutionally permissible.

5. The old statute provided that "[o]nly the attorneys for the defendant and for the state, persons

concede noncompliance with the statutory procedure, appellant has failed to demonstrate, and our reading of the record has failed to illuminate, any showing of harm *to him* by having the judge and the court reporter in the same room with the child and by not hiding the video operator from the child's view. The mandatory language at issue from old Article 38.071(3) was obviously intended to ensure the welfare of the child, not to protect appellant's rights or privileges.

We therefore overrule appellant's third ground for review.

In summation, we find that the trial court's use of the 38.071(3) procedure did not abrogate appellant's Sixth Amendment rights to confrontation and effective assistance of counsel and that, although the trial court failed to follow exactly the provisions of old Article 38.071(3), such did not adversely affect appellant. Consequently, the judgments of the Court of Appeals and the trial court are affirmed.

necessary to operate the equipment, and ... [t]he persons operating the equipment *shall be confined to an adjacent room* or behind a screen or mirror that permits them to see and hear the child during his testimony." [Emphasis added.] At the hearing on remand the prosecutor ex-

plained that they were unable to set up the telecast pursuant to the statute because "we didn't have the facilities to do it exactly." The new statute now provides that the outlined procedures are to be followed "[t]o the extent practicable." See footnote 1.