# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00163-CR

**Mickey Craig Adams, Appellant**

**v.**

**The State of Texas, Appellees**

### FROM THE CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
### NO. 0795566D, HONORABLE WAYNE F. SALVANT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Mickey Craig Adams appeals from a district-court judgment following a jury trial in which he was found guilty of aggravated sexual assault of a child and indecency with a child by contact. Tex. Pen. Code Ann. '' 21.11, 22.021 (West 2003). The jury assessed punishment at forty years= confinement for the first count and twenty years= confinement for the second. Appellant brings this appeal asserting that: (1) the district court erred by failing to sustain appellant=s objection that the testimony of a Child Protective Service (ACPS@) worker was hearsay because she was not the Aoutcry@ witness as defined by article 38.072 of the Texas Code of Criminal Procedure and by failing to conduct a hearing to determine

that issue, as required by the same statute, and (2) appellant=s counsel was ineffective.  Tex. Code Crim.

Proc. Ann. art. 38.072 (West Supp. 2003).  We will affirm the district court=s judgment.

**FACTS**

Appellant=s stepdaughter, H.B., told her brother that appellant had touched her

inappropriately while she pretended to sleep.  The brother related H.B.=s statement to a person at the

school he and H.B. attended.[1]  As a result of what the brother revealed, the school called an investigator

with CPS, Crystal Clay, to interview H.B.  During the interview, the then eleven-year-old girl explained, in

detail, appellant=s actions.  H.B. told Clay that appellant had touched her private area and inserted his finger

into her vagina on several occasions.  The State charged appellant with two counts of aggravated sexual

assault of a child and three counts of indecency with a child by contact.  A jury found him guilty of one count

of each charge.

**DISCUSSION**

*Outcry testimony*

---

[1] The record does not reflect the person at the school to whom the brother reported the statement.

By his first point of error, appellant asserts that the district court erred in failing to sustain his objection that Clay was not the Aoutcry@ witness and in failing to conduct a hearing in order to determine that issue. Article 38.072 of the Texas Code of Criminal Procedure is a limited exception to the preclusion of hearsay evidence. Tex. Code Crim. Proc. Ann. art. 38.072. The statue defines Aoutcry@ statements as the victim=s statements made to the first person, other than the defendant, eighteen years of age or older, which describe the alleged offense. *Id.* ' (2)(a). The statute only applies to certain charged offenses, including indecency with a child and other sexual offenses under chapter 21 of the penal code, when the offense is committed against a child twelve years of age or younger. *Id.* ' 1. As a further predicate for admission of outcry-witness testimony, the statute requires that Athe trial court find, in a hearing conducted outside the presence of the jury, that the statement is reliable based on time, content, and circumstances of the statement.@ *Id.* ' 2(b)(2).

Here, the district court did not conduct a hearing to determine that the statement was reliable based on the time, content, and circumstances of the statement. The Texas Court of Criminal Appeals has evaluated a similar situation. In *Long v. State*, the defendant was tried for aggravated sexual assault of a four-year-old child. 800 S.W.2d 545 (Tex. Crim. App. 1990). The State called an outcry witness; however, when defense counsel objected to the witness=s testimony as hearsay, the district court overruled the objection and allowed the witness to testify without a hearing to determine her competency as an outcry witness. *Id.* at 545. The court of criminal appeals held that the State had the burden to satisfy each element of the predicate for admission of outcry testimony pursuant to article 38.072; thus, there was error. *Id.* at 548. The court also held that the Ahearsay@ objection considered within the context of the

**3**

record was adequate notice to the district court that counsel was objecting to the witness testifying before a hearing had been conducted; therefore, the error was preserved.[2]  *Id*.

We hold that the failure of the district court to conduct a hearing to determine that the outcry statement was reliable based on the time, content, and circumstances of the statement was error.  When the State called Clay as the Aoutcry@ witness, defense counsel said, AYour honor, I object.  I think we need to have a voir dire to determine whether this is a proper outcry witness.@  Appellant objected in a manner that made it reasonably clear to the district court what his objection meantCthat he wanted a hearing on the issue of the competency of the case worker to testify as an outcry witness.  We hold that appellant preserved the error.

### Harmless-Error Analysis

Having held that the district court erred by overruling appellant=s objection, we must examine whether that error was harmful.  Tex. R. App. P. 44(2)(b).  In harmless-error analysis, we must

---

[2]  The State asserts that unless defense counsel clearly objects to the omission of a hearing in the article 38.072 context, the error is waived.  *See Rodriguez v. State*, 762 S.W.2d 727, 731 (Tex. App.CSan Antonio 1988), *pet. dism=d*, 815 S.W.2d 666 (Tex. Crim. App. 1991); *Hightower v. State*, 736 S.W.2d 949, 953 (Tex. App.CEastland 1987), *aff=d*, 822 S.W.2d 48 (Tex. Crim. App. 1991).  However, we find the standards set forth in *Long* to be controlling.  *See Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990).

4

consider five factors: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the state and its probable collateral implications; (4) the weight a juror would probably place on the error; and (5) whether declaring the error harmless would encourage the state to repeat with impunity. *Harris v. State*, 790 S.W.2d 568, 587-89 (Tex. Crim. App. 1989).

With regard to the first factor, the error arose from the State=s failure to comply with all the predicate requirements set out in article 38.072 that would allow Clay=s testimony to be excepted from hearsay preclusion. *See* Tex. Code Crim. Proc. Ann. art. 38.072, ' 2.

In reviewing the second factor, we must determine whether the State intended to taint the evidence at trial by offering inadmissible evidence. *Higginbotham v. State*, 807 S.W.2d 732, 735 (Tex. Crim. App. 1991). The record in this case shows that the State answered the defense=s objections with assertions that it would be able to prove Clay=s qualification as an outcry witness through her testimony. The record also shows that the State had complied with the notice provisions set out in article 38.072. Tex. Code Crim. Proc. Ann. art. 38.072, ' 2(b)(1) (requiring party intending to call outcry witness to notify adverse party at least fourteen days before proceeding begins that they intend to do so, and whom they will call, and provide adverse party with written summary of statement). Given the fact that the State gave defense counsel notice of its intention to call Clay as an outcry witness and that defense counsel did not object to the testimony on the ground of surprise, it does not appear that the State was trying to taint the trial by offering inadmissible evidence. *See Nelson v. State*, 893 S.W.2d 699, 703 (Tex. App.CEl Paso 1995, no pet.).

**5**

The third factor requires this Court to evaluate whether, or to what extent, the error was emphasized by the State and its probable collateral implications. As to the first prong of the third factor, the record reflects that the State did not emphasize Clay=s testimony. The direct outcry testimony was brief and to the point. In his opening argument, the State never directly mentioned Clay=s testimony. The State mentioned Clay but only in the context of other admitted evidence, *e.g.*, the audio tape of her interview with H.B.: AListen to the audio tape again. That audio tape rings true. The CPS worker, Crystal, did not lead her, just asked her what happened, what happened, what happened.@ Later on, in closing argument the State again mentioned Clay but not her outcry testimony:

> . . . immediately the school administrator said we have to report this, they called the CPS hotline and Crystal Clay is up there the next day. And what does she do? She doesn=t get in there and say tell me about how your father is molesting you, she goes in there and says, let=s explore the allegations your brother made. She lets [H.B.] tell the truth, you know, what happens. And then she says, well do you know what bad touching is? Well, they touch your private parts. Have you ever been touched badly? . . . . Crystal has to draw it out . . . . Crystal never brings up the name of the father, it comes out of [H.B.] first. And that tape pretty much stops right there and Crystal told you why. They need to get it on videotape and that=s what they did.

None of the State=s argument addressed Clay=s testimony as the outcry witness; it only references the audio tape made at the first interview with H.B.

As to the second prong, we must examine whether Clay=s testimony disparaged a sole defense and its impact on the outcome of the case. *See Higginbotham*, 807 S.W.2d at 737. Clay=s testimony was not the only evidence of the assaults that appellant perpetrated against H.B. H.B. testified extensively about each sexual encounter that she endured with appellant. The audio tape of Clay=s first

**6**

interview with H.B. also details the accounts of abuse. Further, the testimony that Clay gave as the outcry witness is merely a relation of the conversation that Clay recorded in her first interview with H.B. Appellant did not object to the admission of the audio tape. We have listened to the tape. Any harm caused by allowing Clay to testify without a hearing is markedly diminished by the fact that the same evidence was allowed, without objection, through the audio tape. Clay=s testimony merely corroborated that of H.B.=s testimony in court and on the audio tape and had little or no collateral implications.

With regard to the fourth factor, the weight a juror would probably place on the error, the record shows that although the State did not stress the testimony of Clay, appellant=s attorneys relied heavily on her testimony in their closing argument to highlight discrepancies between H.B.=s testimony in court and her first statement to Clay. It is probable that any weight the jury gave to Clay=s testimony was mitigated by the fact that the same testimony was in turn used against the State.

The fifth factor requires this Court to inquire whether declaring this error harmless would encourage the State to repeat the error with impunity. Because the harm analysis is intensely fact-specific, our holding in this particular case would not motivate the State to repeat the error. Although the district court erred by not conducting a hearing to establish Clay as the outcry witness under article 38.072, the error was harmless. We overrule appellant=s first point of error.

*Ineffectiveness of Counsel*

By his second point of error, appellant asserts that he received ineffective assistance of counsel. Appellant=s sole claim of ineffectiveness of counsel rests on the fact that his counsel did not object to arguably damaging testimony by a probation officer during the sentencing phase at his trial. The standard

7

of review for ineffectiveness of counsel, either retained or appointed, is set forth in *Strickland v. Washington*. *Strickland v. Washington*, 466 U.S. 668 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). This standard now applies to both phases of a bifurcated trial. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). The claimant, under the *Strickland* standard, must prove that his counsel=s representation so undermined the A proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.@ *Strickland*, 466 U.S. at 686. A defendant=s claim that counsel=s assistance was so defective as to require reversal of a conviction has two components. First, the convicted defendant must show that his counsel=s performance was deficient; second, he must show the deficient performance prejudiced the defense. *See id.* at 687.

In order to show prejudice, the defendant must demonstrate that there is reasonable probability that but for the counsel=s deficient performance, the result of the proceedings would have been different. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). If the defendant fails to make the required showing of either deficient performance or prejudice, his claim must fail. *See id*.

The review of a claim of ineffective assistance of counsel is highly deferential. *See Strickland*, 466 U.S. at 689. We must indulge a strong presumption that trial counsel=s conduct falls within a wide range of reasonable representation and that the challenged action might be considered sound trial strategy. *See McFarland*, 928 S.W.2d at 500. We assess the totality of counsel=s representation rather

**8**

than his or her isolated acts or omissions. *See Strickland*, 466 U.S. at 689; *Ramirez v. State*, 987 S.W.2d 938, 943 (Tex. App.CAustin 1999, no pet.).

The first step of the *Strickland* standard asks whether appellant=s counsel was deficient. This Court must review the performance of appellant=s counsel by evaluating the totality of his performance at the respective phase of appellant=s trial. Appellant must demonstrate that counsel=s performance was unreasonable under the prevailing professional norms and that the challenged acts or omissions were not sound trial strategy. *Strickland*, 466 U.S. at 688. We do not evaluate the effectiveness of counsel=s performance in hindsight, but from counsel=s perspective at trial. *Id*.

Trial strategy may constitute ineffective assistance only if the record demonstrates that counsel=s acts or omissions were without plausible basis. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A conscious and informed decision on trial strategy cannot be the basis for ineffective assistance of counsel unless it is so ill-chosen that it permeates the trial with obvious unfairness. The record shows that appellant=s counsel was aware that the State intended to call the probation officer. The record further shows that counsel used the same witness to elicit information on topics he wished to address. It is reasonable that counsel did not object to the probation officer=s testimony because doing so would question her credibility, and counsel in turn wanted to use the probation officer as a witness to make his points. There is nothing in the record to overcome the strong presumption that counsel=s actions fell within the wide range of reasonable professional assistance.

The record sheds light on a possible and reasonable trial strategy with regard to this witness that explains why counsel made the specific omission of which appellant now complains. Under the

circumstances, appellant cannot, in this appeal, overcome the strong presumption that his counsel=s actions were the result of considered trial strategy that was reasonable from counsel=s perspective at trial. *See Jackson*, 877 S.W.2d at 771. The trial-court record does not reveal ineffectiveness of counsel sufficient to sustain such a claim. After reviewing the trial record, we hold that appellant has failed to establish that his counsel=s performance was deficient. We overrule appellant=s second point of error.

### CONCLUSION

We affirm the district-court judgment.


Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: May 15, 2003

Do Not Publish