TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00163-CR






Mickey Craig Adams, Appellant



v.



The State of Texas, Appellees







FROM THE CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

NO. 0795566D, HONORABLE WAYNE F. SALVANT, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant Mickey Craig Adams appeals from a district-court judgment following a
jury trial in which he was found guilty of aggravated sexual assault of a child and indecency with a
child by contact. Tex. Pen. Code Ann. §§ 21.11, 22.021 (West 2003). The jury assessed punishment
at forty years' confinement for the first count and twenty years' confinement for the second. 
Appellant brings this appeal asserting that: (1) the district court erred by failing to sustain
appellant's objection that the testimony of a Child Protective Service ("CPS") worker was hearsay
because she was not the "outcry" witness as defined by article 38.072 of the Texas Code of Criminal
Procedure and by failing to conduct a hearing to determine that issue, as required by the same statute,
and (2) appellant's counsel was ineffective. Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp.
2003). We will affirm the district court's judgment.


FACTS


 Appellant's stepdaughter, H.B., told her brother that appellant had touched her
inappropriately while she pretended to sleep. The brother related H.B.'s statement to a person at the
school he and H.B. attended. (1) As a result of what the brother revealed, the school called an
investigator with CPS, Crystal Clay, to interview H.B. During the interview, the then eleven-year-old girl explained, in detail, appellant's actions. H.B. told Clay that appellant had touched her
private area and inserted his finger into her vagina on several occasions. The State charged appellant
with two counts of aggravated sexual assault of a child and three counts of indecency with a child
by contact. A jury found him guilty of one count of each charge.


DISCUSSION


Outcry testimony

 By his first point of error, appellant asserts that the district court erred in failing to
sustain his objection that Clay was not the "outcry" witness and in failing to conduct a hearing in
order to determine that issue. Article 38.072 of the Texas Code of Criminal Procedure is a limited
exception to the preclusion of hearsay evidence. Tex. Code Crim. Proc. Ann. art. 38.072. The statue
defines "outcry" statements as the victim's statements made to the first person, other than the
defendant, eighteen years of age or older, which describe the alleged offense. Id. § (2)(a). The
statute only applies to certain charged offenses, including indecency with a child and other sexual
offenses under chapter 21 of the penal code, when the offense is committed against a child twelve
years of age or younger. Id. § 1. As a further predicate for admission of outcry-witness testimony,
the statute requires that "the trial court find, in a hearing conducted outside the presence of the jury,
that the statement is reliable based on time, content, and circumstances of the statement." Id.
§ 2(b)(2).

 Here, the district court did not conduct a hearing to determine that the statement was
reliable based on the time, content, and circumstances of the statement. The Texas Court of
Criminal Appeals has evaluated a similar situation. In Long v. State, the defendant was tried for
aggravated sexual assault of a four-year-old child. 800 S.W.2d 545 (Tex. Crim. App. 1990). The
State called an outcry witness; however, when defense counsel objected to the witness's testimony
as hearsay, the district court overruled the objection and allowed the witness to testify without a
hearing to determine her competency as an outcry witness. Id. at 545. The court of criminal appeals
held that the State had the burden to satisfy each element of the predicate for admission of outcry
testimony pursuant to article 38.072; thus, there was error. Id. at 548. The court also held that the
"hearsay" objection considered within the context of the record was adequate notice to the district
court that counsel was objecting to the witness testifying before a hearing had been conducted;
therefore, the error was preserved. (2) Id.

 We hold that the failure of the district court to conduct a hearing to determine that the
outcry statement was reliable based on the time, content, and circumstances of the statement was
error. When the State called Clay as the "outcry" witness, defense counsel said, "Your honor, I
object. I think we need to have a voir dire to determine whether this is a proper outcry witness." 
Appellant objected in a manner that made it reasonably clear to the district court what his objection
meant--that he wanted a hearing on the issue of the competency of the case worker to testify as an
outcry witness. We hold that appellant preserved the error.


Harmless-Error Analysis

 Having held that the district court erred by overruling appellant's objection, we must
examine whether that error was harmful. Tex. R. App. P. 44(2)(b). In harmless-error analysis, we
must consider five factors: (1) the source of the error; (2) the nature of the error; (3) whether or to
what extent it was emphasized by the state and its probable collateral implications; (4) the weight
a juror would probably place on the error; and (5) whether declaring the error harmless would
encourage the state to repeat with impunity. Harris v. State, 790 S.W.2d 568, 587-89 (Tex. Crim.
App. 1989).

 With regard to the first factor, the error arose from the State's failure to comply with
all the predicate requirements set out in article 38.072 that would allow Clay's testimony to be
excepted from hearsay preclusion. See Tex. Code Crim. Proc. Ann. art. 38.072, §2.

 In reviewing the second factor, we must determine whether the State intended to taint
the evidence at trial by offering inadmissible evidence. Higginbotham v. State, 807 S.W.2d 732, 
735 (Tex. Crim. App. 1991). The record in this case shows that the State answered the defense's
objections with assertions that it would be able to prove Clay's qualification as an outcry witness
through her testimony. The record also shows that the State had complied with the notice provisions
set out in article 38.072. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1) (requiring party
intending to call outcry witness to notify adverse party at least fourteen days before proceeding
begins that they intend to do so, and whom they will call, and provide adverse party with written
summary of statement). Given the fact that the State gave defense counsel notice of its intention to
call Clay as an outcry witness and that defense counsel did not object to the testimony on the ground
of surprise, it does not appear that the State was trying to taint the trial by offering inadmissible
evidence. See Nelson v. State, 893 S.W.2d 699, 703 (Tex. App.--El Paso 1995, no pet.).

 The third factor requires this Court to evaluate whether, or to what extent, the error
was emphasized by the State and its probable collateral implications. As to the first prong of the
third factor, the record reflects that the State did not emphasize Clay's testimony. The direct outcry
testimony was brief and to the point. In his opening argument, the State never directly mentioned 
Clay's testimony. The State mentioned Clay but only in the context of other admitted evidence, e.g.,
the audio tape of her interview with H.B.: "Listen to the audio tape again. That audio tape rings
true. The CPS worker, Crystal, did not lead her, just asked her what happened, what happened, what
happened." Later on, in closing argument the State again mentioned Clay but not her outcry
testimony:


. . . immediately the school administrator said we have to report this, they called the
CPS hotline and Crystal Clay is up there the next day. And what does she do? She
doesn't get in there and say tell me about how your father is molesting you, she goes
in there and says, let's explore the allegations your brother made. She lets [H.B.] tell
the truth, you know, what happens. And then she says, well do you know what bad
touching is? Well, they touch your private parts. Have you ever been touched badly?
. . . . Crystal has to draw it out . . . . Crystal never brings up the name of the father,
it comes out of [H.B.] first. And that tape pretty much stops right there and Crystal
told you why. They need to get it on videotape and that's what they did.



None of the State's argument addressed Clay's testimony as the outcry witness; it only references
the audio tape made at the first interview with H.B.

 As to the second prong, we must examine whether Clay's testimony disparaged a sole
defense and its impact on the outcome of the case. See Higginbotham, 807 S.W.2d at 737. Clay's
testimony was not the only evidence of the assaults that appellant perpetrated against H.B. H.B.
testified extensively about each sexual encounter that she endured with appellant. The audio tape
of Clay's first interview with H.B. also details the accounts of abuse. Further, the testimony that
Clay gave as the outcry witness is merely a relation of the conversation that Clay recorded in her first
interview with H.B. Appellant did not object to the admission of the audio tape. We have listened
to the tape. Any harm caused by allowing Clay to testify without a hearing is markedly diminished
by the fact that the same evidence was allowed, without objection, through the audio tape. Clay's
testimony merely corroborated that of H.B.'s testimony in court and on the audio tape and had little
or no collateral implications.

 With regard to the fourth factor, the weight a juror would probably place on the error,
the record shows that although the State did not stress the testimony of Clay, appellant's attorneys
relied heavily on her testimony in their closing argument to highlight discrepancies between H.B.'s
testimony in court and her first statement to Clay. It is probable that any weight the jury gave to
Clay's testimony was mitigated by the fact that the same testimony was in turn used against the State. 

 The fifth factor requires this Court to inquire whether declaring this error harmless
would encourage the State to repeat the error with impunity. Because the harm analysis is intensely
fact-specific, our holding in this particular case would not motivate the State to repeat the error. 
Although the district court erred by not conducting a hearing to establish Clay as the outcry witness
under article 38.072, the error was harmless. We overrule appellant's first point of error.


Ineffectiveness of Counsel

 By his second point of error, appellant asserts that he received ineffective assistance
of counsel. Appellant's sole claim of ineffectiveness of counsel rests on the fact that his counsel did
not object to arguably damaging testimony by a probation officer during the sentencing phase at his
trial. The standard of review for ineffectiveness of counsel, either retained or appointed, is set forth
in Strickland v. Washington. Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State,
726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting Strickland). This standard now applies to both
phases of a bifurcated trial. See Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). 
The claimant, under the Strickland standard, must prove that his counsel's representation so
undermined the "proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result." Strickland, 466 U.S. at 686. A defendant's claim that counsel's
assistance was so defective as to require reversal of a conviction has two components. First, the
convicted defendant must show that his counsel's performance was deficient; second, he must show
the deficient performance prejudiced the defense. See id. at 687.

 In order to show prejudice, the defendant must demonstrate that there is reasonable
probability that but for the counsel's deficient performance, the result of the proceedings would have
been different. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The defendant
has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the
evidence. See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). If the defendant
fails to make the required showing of either deficient performance or prejudice, his claim must fail. 
See id.

 The review of a claim of ineffective assistance of counsel is highly deferential. See
Strickland, 466 U.S. at 689. We must indulge a strong presumption that trial counsel's conduct falls
within a wide range of reasonable representation and that the challenged action might be considered
sound trial strategy. See McFarland, 928 S.W.2d at 500. We assess the totality of counsel's
representation rather than his or her isolated acts or omissions. See Strickland, 466 U.S. at 689;
Ramirez v. State, 987 S.W.2d 938, 943 (Tex. App.--Austin 1999, no pet.).

 The first step of the Strickland standard asks whether appellant's counsel was
deficient. This Court must review the performance of appellant's counsel by evaluating the totality
of his performance at the respective phase of appellant's trial. Appellant must demonstrate that
counsel's performance was unreasonable under the prevailing professional norms and that the
challenged acts or omissions were not sound trial strategy. Strickland, 466 U.S. at 688. We do not
evaluate the effectiveness of counsel's performance in hindsight, but from counsel's perspective at
trial. Id.

 Trial strategy may constitute ineffective assistance only if the record demonstrates
that counsel's acts or omissions were without plausible basis. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999). A conscious and informed decision on trial strategy cannot be the basis for
ineffective assistance of counsel unless it is so ill-chosen that it permeates the trial with obvious
unfairness. The record shows that appellant's counsel was aware that the State intended to call the
probation officer. The record further shows that counsel used the same witness to elicit information
on topics he wished to address. It is reasonable that counsel did not object to the probation officer's
testimony because doing so would question her credibility, and counsel in turn wanted to use the
probation officer as a witness to make his points. There is nothing in the record to overcome the
strong presumption that counsel's actions fell within the wide range of reasonable professional
assistance.

 The record sheds light on a possible and reasonable trial strategy with regard to this
witness that explains why counsel made the specific omission of which appellant now complains.
Under the circumstances, appellant cannot, in this appeal, overcome the strong presumption that his
counsel's actions were the result of considered trial strategy that was reasonable from counsel's
perspective at trial. See Jackson, 877 S.W.2d at 771. The trial-court record does not reveal
ineffectiveness of counsel sufficient to sustain such a claim. After reviewing the trial record, we
hold that appellant has failed to establish that his counsel's performance was deficient. We overrule
appellant's second point of error.


CONCLUSION


 We affirm the district-court judgment.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: May 15, 2003

Do Not Publish

1. The record does not reflect the person at the school to whom the brother reported the
statement.
2. The State asserts that unless defense counsel clearly objects to the omission of a hearing
in the article 38.072 context, the error is waived. See Rodriguez v. State, 762 S.W.2d 727, 731 (Tex. 
App.--San Antonio 1988), pet. dism'd, 815 S.W.2d 666 (Tex. Crim. App. 1991); Hightower v.
State, 736 S.W.2d 949, 953 (Tex. App.--Eastland 1987), aff'd, 822 S.W.2d 48 (Tex. Crim. App.
1991). However, we find the standards set forth in Long to be controlling. See Long v. State, 800
S.W.2d 545, 548 (Tex. Crim. App. 1990).