**Opinion filed October 18, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00302-CR

_____

## MARK ODIN CHAMBERS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR 44,980**

## M E M O R A N D U M   O P I N I O N

The grand jury ultimately returned a four-count reindictment against Mark Odin Chambers. In Count I, the grand jury charged Appellant with the offense of continuous sexual abuse of a young child or children. In Counts II, III, and IV, the grand jury charged Appellant with separate offenses of aggravated sexual assault of a child younger than fourteen years of age. At a subsequent trial, the jury convicted Appellant of the offense of continuous sexual abuse of a young child or children as

charged in Count I of the indictment and of the offense of aggravated sexual assault of a child younger than fourteen years of age as charged in Count IV of the indictment. Upon motion of the State, the trial court dismissed the charges in Counts II and III. The jury assessed Appellant's punishment at confinement for life for each offense. The trial court sentenced him accordingly. We modify and affirm.

In his first issue on appeal, Appellant makes an ineffective-assistance-of-counsel claim. He contends that, during the plea-bargaining process, trial counsel did not inform him of the full range of punishment applicable to the offenses with which he was charged. In his second issue on appeal, Appellant maintains that he was deprived of his rights under the Confrontation Clause of the United States Constitution when the trial court allowed one of the child victims to testify by closed-circuit television. Finally, in his third issue on appeal, Appellant asserts that the trial court erred when it assessed court-appointed attorney's fees against him.

On appeal, Appellant does not challenge the sufficiency of the evidence to support his convictions. Therefore, we will not detail the evidence related to the commission of the offenses.

We will first discuss Appellant's ineffective-assistance-of-counsel claim. Appellant complains that the first of his four different court-appointed lawyers did not inform him of the full range of punishment that Appellant would face at trial. Appellant's position is that, had he known that the possible minimum sentence he faced was twenty-five years, he would have accepted a six-year plea bargain that the State had offered.

The range of punishment for the offense of continuous sexual abuse of a young child or children is confinement for twenty-five years to ninety-nine years or life. TEX. PENAL CODE ANN. § 21.02(h) (West 2019). A conviction for aggravated sexual assault of a child under the age of fourteen years is punishable by confinement

2

for five years to ninety-nine years or life, and a fine of up to $10,000 may also be imposed. *Id.* §§ 12.32, 22.021(e).

In the early stages of this case, the trial court found that Appellant was indigent, and it appointed an attorney to represent him. As the case progressed, Appellant went through four different court-appointed lawyers. On appeal, he complains of the first one only.

At a pretrial hearing on January 14, 2016, Appellant's trial counsel acknowledged that the State offered to recommend a sentence of confinement for ten years in exchange for Appellant's plea of guilty. Trial counsel informed the trial court that Appellant would probably want a jury trial.

At another pretrial hearing on February 11, 2016, Appellant's trial counsel informed the trial court that the State had offered to reduce the recommendation to confinement for six years. But he also told the trial court that Appellant had rejected that offer, as he had the ten-year offer, and that Appellant wanted a jury trial. Appellant told the trial court that he agreed with trial counsel's statement.

On March 14, 2016, the State filed its "NOTICE OF STATE'S INTENT TO ENHANCE PUNISHMENT FOR A FELONY OFFENSE UNDER SECTION 12.42 PENAL CODE BY PROOF OF TWO PRIOR SEQUENTIAL FELONY CONVICTIONS." During another hearing on March 15, 2016, the State referred to that filing and noted in open court that the minimum possible punishment would increase to twenty-five years upon conviction. Appellant was present in court when the State made that statement. At this point, Appellant had not been indicted for the offense of continuous sexual abuse of a young child, and the State had not specifically withdrawn its offer of six years.

On April 14, 2016, at yet another hearing, the State provided notice that Hood County officials wanted to charge Appellant with similar offenses to those in this

case. Hood County had agreed to "12.45 their cases to Midland County" in exchange for Appellant's agreement to confinement for fifteen years. The effect would be to bar prosecution of the Hood County incidents. *See id.* §12.45. The State made it clear that, if the case went to trial, twenty-five years' confinement would be the minimum punishment that it would seek. Trial counsel informed the trial court that he had explained that to Appellant. Appellant was present in court when his trial counsel and the State made the above statements in open court.

The State left the offer of fifteen years open for one week after the hearing. Appellant did not accept the offer but, instead, chose to go to trial before a jury upon his pleas of not guilty.

On appeal, Appellant claims that he would have accepted the State's offer of confinement for six years if he had known that the minimum sentence was twenty-five years. But, he suggests, no one told him about the possible minimum sentence of twenty-five years that he faced if he went to trial and was found guilty. The record does not support that position. Appellant was present on at least two occasions when the State referred to the minimum punishment of twenty-five years. Yet, at a subsequent status hearing, Appellant rejected the State's fifteen-year offer, as he had all other previous offers.

Generally, to determine whether Appellant's counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694; *Hernandez*, 726 S.W.2d at 55.

The Sixth Amendment right to counsel extends to the plea-bargaining process. Defendants are "entitled to the effective assistance of competent counsel" at the plea-bargaining stage. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Allegations of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Typically, the record on direct appeal is not sufficient to show that counsel's representation was so deficient to overcome the presumption that counsel's conduct was reasonable and professional. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Mallett v. State*, 65 S.W.3d 59, 64–65 (Tex. Crim. App. 2001). Further, if an appellant does not prove one component of the *Strickland* test, there is no need for the court to address the other. *Strickland*, 466 U.S. at 697.

After the trial, Appellant filed a motion for new trial, which was overruled by operation of law. The record before us is not sufficient to show that trial counsel's representation was deficient to a level that would overcome the presumption that counsel's conduct was reasonable and professional. Appellant has not shown that he was not "properly advised." The record contains nothing to indicate that trial counsel ever neglected to discuss relevant possible punishment issues with him, particularly at or before the time that he rejected the six-year deal in the trial court or at any other time that the plea offer remained open.

It is important to note that Appellant was present in court when the State announced the possibility of a minimum period of confinement of twenty-five years. Trial counsel represented to the trial court that he had gone over that possibility with Appellant. We find that Appellant has not shown that the performance of his counsel fell below an objective standard of reasonableness. *See Strickland*, 466 U.S.

at 687–88. He has thus failed to meet the first prong of *Strickland*. We overrule Appellant's first issue on appeal.

Next, we will discuss Appellant's claim in his second issue that the trial court erred when it allowed L.C., one of the child victims, to testify by closed-circuit television.

Before the jury was selected, the State proposed that L.C. be allowed to testify while accompanied by a service dog and while seated on a "nondescript brown sofa" that would be placed next to the court reporter. The purpose of the special arrangement was to closely replicate the therapeutic setting that L.C. was accustomed to when she had discussed the circumstances of the alleged abuse with her therapist. The trial court granted that motion, and the parties conducted voir dire examination of the jury panel. The jury was seated on Friday, October 6, 2017. The trial was to commence on Monday, October 9, 2017.

Before the trial began on Monday, the State filed a motion in which it asked the trial court to allow L.C. to testify by closed-circuit television rather than as previously arranged. During a hearing on the motion, the district attorney represented to the trial court that she and another attorney for the State had taken L.C. into the courtroom on Saturday before the trial was to begin on Monday. The district attorney also represented to the trial court that, because of L.C.'s reaction to that visit to the courtroom, the district attorney contacted L.C.'s therapist that same day. Later that same day, L.C. talked with her therapist, and around 11:00 p.m. on Saturday night, the therapist and the district attorney again conferred. The district attorney represented to the trial court that she did not know that the filing would be necessary until after that conversation with the therapist. The district attorney informed the trial court that, the next morning, Sunday, she notified Appellant's trial counsel that she would be filing the motion and later sent trial counsel a copy.

6

Appellant's trial counsel agreed that the State had indeed notified him on Sunday, "probably yesterday before noon."

Also, at the Monday morning hearing on the State's motion to allow L.C. to testify by closed-circuit television, the State presented testimony from L.C.'s therapist, Heather Brogan-McCarty. McCarty told the trial court that she talked with L.C. after L.C. visited the courthouse on Saturday. She testified that L.C. was terrified of being around Appellant and that L.C. was shocked to find out that the layout of the courtroom was such that she would be able to see Appellant when she testified. McCarty also testified that she believed that L.C. would "shut down and immobilize" if L.C. were required to testify in the courtroom. In addition, she believed that L.C. would "suffer undue psychological harm by having to testify in the courtroom."

After the hearing, the trial court ruled that L.C. could testify via closed-circuit television. The trial court specifically found that to have L.C. testify by conventional means would present a "serious threat of emotional distress" to L.C., "more than mere nervousness or some reluctance to testify."

Appellant then filed "DEFENDANT'S MOTION FOR MISTRIAL AND MOTION FOR NEW TRIAL" in connection with the issue of the trial court's ruling on L.C.'s being allowed to testify by closed-circuit television; the motion included various other matters not pertinent to this appeal. As we have noted, the trial court denied that part of the motion that dealt with L.C.'s testimony and allowed L.C. to testify by closed-circuit television.

We take Appellant's argument in his second issue on appeal to be that he received inadequate notice of the State's motion to allow L.C. to testify by closed-circuit television and that the inadequate notice, because it came after the jury had already been chosen, prevented him from questioning the potential jurors on the

7

issue of testimony by closed-circuit television. Therefore, he maintains, he was deprived of his due process rights and rights under the Confrontation Clause of the United States Constitution. Importantly, Appellant does not argue that he was deprived of any constitutional right to be tried by an impartial jury.

Instead, Appellant argues: "[B]asic principles of due process and the Sixth Amendment of the United States Constitution's Confrontation Clause require notice, and . . . in this cause, the State's request came as a surprise." Appellant also maintains that "Article 38.074 expressly indicates that the trial court must consider not only the interests of the child, but the rights of the defendant, which in this cause would be the Confrontation Clause of the Sixth Amendment of the U.S. Constitution as well as due process considerations."

Appellant has cited no authority in support of his due process claims insofar as they relate to his Confrontation Clause claim, and those arguments are waived. TEX. R. APP. P. 38.1(i). However, even if we were to consider Appellant's argument as to the inadequacy of notice and "surprise," then, based upon the circumstances that we have outlined, we hold that the State provided notice as soon as practicable and that the notice was reasonable under the totality of the circumstances and facts. *Foster v. State*, No. 09-18-00252-CR, 2019 WL 3308959, at *7 (Tex. App.—Beaumont July 24, 2019, no pet. h.) (mem. op., not designated for publication).

There is yet another reason why Appellant cannot prevail on the due process issue—the record would not support a finding of harm, even if error were shown. In the motion for mistrial and new trial that Appellant filed during the trial, Appellant presented the trial court with the names of specific jury panel members who he claims would have been struck for cause. He also presented the trial court with specific questions that he would have asked the panel members if he had known about the closed-circuit testimony before voir dire. However, the record lacks any

8

testimony to show what the answers to those proposed questions would have been or to show that he was forced to go to trial with a less-than-impartial jury.

After his trial, Appellant filed a general "in the interests of justice" motion for new trial. That motion was overruled by operation of law, and no evidence was presented on the motion. Appellant was entitled to be tried by a lawfully constituted jury, one that was impartial; there is nothing in this record to show that "the jurors were anything but impartial," and there is no harm shown. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *see also Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998).

We will next consider that portion of Appellant's second issue on appeal in which he addresses his right under the Sixth Amendment to the United States Constitution to be confronted with the witnesses against him. He maintains that the trial court's allowing L.C. to testify by closed-circuit television violated his rights under the Confrontation Clause. The Confrontation Clause, contained in the Sixth Amendment to the United States Constitution, provides in part that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.

The Texas Code of Criminal Procedure contains provisions for alternative means to present the testimony of certain child witnesses who would be unable to testify in the presence of the defendant about an enumerated offense. Closed-circuit television is one of those alternative means. TEX. CODE CRIM. PROC. ANN. art. 38.071 (West Supp. 2018). Aggravated sexual assault of a child and continuous sexual abuse of a young child or children are two of the enumerated offenses. *Id.*

Article 38.074 of the Texas Code of Criminal Procedure also contains provisions that pertain to the testimony of a child in a criminal case. *Id.* art. 38.074. Article 38.074, section 3(d) provides that a "court may set any other conditions and

limitations on the taking of the testimony of a child that it finds just and appropriate, considering the interests of the child, the rights of the defendant, and any other relevant factors." *Id.* art. 38.074, § 3(d). The State's use of closed-circuit testimony in such cases arises from the fact that the State has a legitimate interest in the protection of child witnesses from the trauma of having to testify in certain kinds of cases. *Marx v. State*, 953 S.W.2d 321, 327 (Tex. Crim. App. 1997); *Gonzales v. State*, 818 S.W.2d 756 (Tex. Crim. App. 1991).

Under both *Craig* and *Gonzales*, before the trial court can admit closed-circuit testimony, it must find, after a hearing and from the evidence, that "(1) the procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) the emotional distress suffered by the child witness in the presence of the defendant is not de minimis ('more than mere nervousness or excitement or some reluctance to testify')." *Marx*, 953 S.W.2d at 327 (quoting *Gonzales*, 818 S.W.2d at 765, which quotes *Maryland v. Craig*, 497 U.S. 836, 855–56 (1990)); *see also Hightower v. State*, 822 S.W.2d 48, 51 (Tex. Crim. App. 1991). When a trial court makes these specific findings from the evidence, as the trial court essentially did on the record here, then "the Confrontation Clause does not prohibit the use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Hightower*, 822 S.W.2d at 51 (quoting *Craig*, 497 U.S. at 857).

We review a trial court's decision to allow closed-circuit testimony for an abuse of discretion. *Marx*, 953 S.W.2d at 328. At the hearing on the State's motion to allow closed-circuit testimony, L.C.'s therapist testified that L.C. was "terrified to see [Appellant]," that L.C. felt "very unsafe," that L.C. would "shut down and

immobilize" if she had to testify in front of Appellant, and that she believed that L.C. would "suffer undue psychological harm" if she had to testify in the courtroom. We hold that this evidence supports the trial court's findings. We find no violation of Appellant's rights under the Sixth Amendment's Confrontation Clause. The trial court did not abuse its discretion when it allowed L.C. to testify by closed-circuit television. *See Aviles v. State*, No. 11-01-00243-CR, 2002 WL 32344503, at *5 (Tex. App.—Eastland Aug. 15, 2002, no pet.) (not designated for publication) (holding that trial court complied with *Craig*'s necessity findings and that use of closed-circuit television for testimony was acceptable).

We have considered all the arguments raised by Appellant in his second issue on appeal. We overrule the issue.

In Appellant's third issue on appeal, he argues that, because the trial court had found him to be indigent, it was improper for the trial court to assess court-appointed attorney's fees against him. The State agrees with Appellant. In its judgment on each count, the trial court ordered Appellant to pay "all costs" in the proceeding, which included $15,676.85 in attorney's fees.

When a trial court has found that a defendant is indigent, he is presumed to remain indigent for the remainder of the proceedings unless there has been a material change in the defendant's financial circumstances. CRIM. PROC. art. 26.04(p). Except upon evidence that there has been a material change since the indigency finding and that a defendant is no longer indigent, the trial court may not assess court-appointed attorney's fees against a defendant. *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013). There is no suggestion in the record that the trial court found any material change in Appellant's financial circumstances. We sustain Appellant's third issue and modify the trial court's judgments and the bill of costs to delete the assessment of attorney's fees.

11

As modified, we affirm the judgments of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


October 18, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.