TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-04-00059-CR




Jonathan Barnes, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 2003-110, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING




O P I N I O N
 
A jury found appellant Jonathan Barnes guilty of three counts of aggravated sexual
assault of a child, for each of which it assessed punishment at ninety-nine years’ imprisonment and
a $10,000 fine. See Tex. Pen. Code Ann. § 22.021 (West Supp. 2004-05). Appellant brings forward
nine points of error complaining of the admission of hearsay, unqualified expert testimony, and
extraneous misconduct evidence; a violation of the witness exclusion rule; the denial of his right of
confrontation; improper jury argument; and double jeopardy. Finding appellant’s double jeopardy
claim to be well-taken, we will reform the judgment of conviction to set aside the conviction on one
of the three counts. We will overrule appellant’s remaining points of error and affirm the judgment
of conviction as reformed.
Background
In July 2002, appellant was living in Lockhart with his two daughters, his girlfriend
Jamie Corley, and Corley’s son. On July 8, Corley and the children went to visit a friend in
Manchaca. Corley testified that during a private moment that night, appellant’s ten-year-old
daughter, C.B., asked Corley “if she could tell me something.” C.B. then told Corley that “her dad
was doing stuff to her, and I asked her what. And she said it was—his penis and balls were put in
her mouth.” C.B. added that she “was touched down in her personal area and on her mouth.” Corley
testified that C.B. had pointed to her vaginal area when she said “down there” and had said that “it
bled and it hurt.” C.B. told Corley that this had happened more than once, soon after her mother died
in 1997.



After returning to Lockhart on the morning of July 9, Corley told appellant what C.B.
had said. They argued, and appellant ordered Corley and her son out of the house. Corley went to
a neighbor’s house and called the police.
Lockhart police officer Tara Tippie was one of the officers who responded to the call. 
Tippie testified that appellant remained calm when told why the officers were there. He admitted
Tippie into the house, introduced her to his daughters, and remained outside while Tippie spoke to
the girls. Tippie testified that C.B. told her that “her dad had made her have sex with him.” More
specifically, Tippie testified that C.B. said that “her father had put his penis in her mouth” and “also
she pointed down to her vagina area.”
Tippie’s patrol car was equipped with video recording equipment and the officer was
wearing a microphone. Her conversation with C.B. was recorded, and the recording was introduced
in evidence by the defense and played for the jury. The court reporter’s record reflects that C.B. told
Tippie, “Daddy forced me to have sex with him.” Asked when, C.B. answered, “When I was—back
before. I was four or five or six.” Asked how often this had happened, C.B. replied, “It was three
or four times.” Asked what he had made her do, C.B. said, “He put his—he put his penis in my
mouth and here.” 
Dr. Beth Nauert, a pediatrician, examined C.B. at the Children’s Advocacy Center
two weeks after her outcry. Nauert testified that during a preliminary interview, C.B. told her that
when she was “4 or 5 or 6,” her father “took [her] clothes off” and touched her with “his hands and
his nuts.” Nauert said that C.B. described being touched “both in her mouth and her vaginal area.” 
Asked by the prosecutor “whether or not there had been actual penetration of the vaginal area,”
Nauert replied, “She said ‘inside.’ I didn’t spend any time trying to determine, you know, how far
inside that was.” Later, during cross-examination, Nauert testified that she was unsure whether C.B.
had said that she was touched “in” or “inside” her vaginal area. Nauert also said that she and C.B.
did not discuss how often this had happened.
Nauert testified that C.B.’s physical examination was normal. Specifically, “her
vaginal area had a normal-sized opening. There were not any tears or scars in her rectal examination,
and mouth examination was also normal.” C.B.’s hymen was intact and there was no physical
indication of sexual abuse. Nauert testified that the physical examination did not rule out the
possibility of sexual abuse, but did not confirm it.
C.B., who was eleven at the time of trial, testified by closed-circuit television. She
was a reluctant witness. She acknowledged having received “bad touches,” but refused to elaborate. 
At the State’s request, the court allowed C.B. to answer questions by writing on a legal pad. In this
manner, C.B. testified that she was mad at appellant because “he raped me.” She also testified that
she had seen a penis only once, during a fifth-grade class.
In his own testimony, appellant denied committing the alleged offenses. He and other
defense witnesses testified that Corley was mentally unstable and not credible. Appellant believed
that Corley had caused C.B. to make the false accusations against him.
 
Hearsay
Statements to Tippie
Appellant contends the trial court erred by admitting Officer Tippie’s testimony
describing C.B.’s statements to her on the morning of July 9. The court overruled appellant’s
hearsay objection after the State invoked the excited utterance exception. Tex. R. Evid. 803(2). We
review evidence rulings for an abuse of discretion. See Montgomery v. State, 810 S.W.2d 372, 390
(Tex. Crim. App. 1991) (op. on reh’g).
Rule 803(2) permits the admission of an out-of-court statement “relating to a startling
event or condition made while the declarant was under the stress of excitement caused by the event
or condition.” The exception is founded on the belief that a statement made as a result of a startling
event or condition is involuntary and does not allow the declarant an opportunity to reflect or
fabricate, thereby ensuring its trustworthiness. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim.
App. 2003); Gutierrez v. State, 85 S.W.3d 446, 455 (Tex. App.—Austin 2002, pet. ref’d). It is not
dispositive that the statement was made in answer to a question or that it was separated by a period
of time from the startling event, but these are factors to be considered in applying the rule. Salazar
v. State, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). The critical determination is whether the
declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at
the time of the statement. Id.
Tippie testified that C.B. was crying and “just very withdrawn from me, very upset.” 
There is no evidence, however, that C.B.’s emotional state was due to the stress of excitement caused
by some startling event or condition. Appellant’s conduct was doubtlessly shocking or startling
when it occurred, but there is nothing in the record to indicate that, five years later, C.B. was still
dominated by the emotions it produced. It has been held that the startling event that triggers an
excited utterance need not be the crime itself. Hunt v. State, 904 S.W.2d 813, 816 (Tex. App.—Fort
Worth 1995, pet. ref’d). Assuming this is correct, there is no evidence of any other startling event
or condition that triggered C.B.’s statements to Tippie. The circumstances shown by this record do
not reflect that C.B.’s statements to the officer “resulted from impulse rather than reason and
reflection.” Zuliani, 97 S.W.3d at 596 (quoting Fowler v. State, 379 S.W.2d 345, 347 (Tex. Crim.
App. 1964)); and see Harvey v. State, 123 S.W.3d 623, 631 (Tex. App.—Texarkana 2003, pet. ref’d)
(outcry six years after assault not shown to be excited utterance). Finding no other grounds for
admission, we agree with appellant that the trial court abused its discretion by admitting Tippie’s
hearsay testimony.
Although Tippie’s hearsay testimony was erroneously admitted, reversible error is
not presented. The erroneous admission of evidence will not result in reversal when the same
evidence was elsewhere received without objection. Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998); Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984); Perez v. State,
113 S.W.3d 819, 831 (Tex. App.—Austin 2003, pet. ref’d). During his cross-examination of Tippie,
appellant offered in evidence the recording of the officer’s conversation with C.B. in which C.B.
made the objected-to statements. By introducing C.B.’s statements to Tippie in this manner,
appellant waived or forfeited his objection to their earlier admission, or alternatively rendered the
earlier error harmless. Leday, 983 S.W.2d at 718. Point of error three is overruled.
 
Outcry to Corley
Appellant contends the trial court erred by admitting Corley’s outcry testimony
without holding a hearing to determine its reliability. See Tex. Code Crim. Proc. Ann. art. 38.072
(West Supp. 2004-05). Article 38.072 creates an exception to the hearsay rule for the outcry
statements of children who are victims of certain sexual and assaultive offenses. As a predicate for
the admission of such testimony, the statute requires the trial court to conduct a hearing outside the
jury’s presence to determine the outcry statement’s reliability based on the time, content, and
circumstances of the statement. Id. art. 38.072, § 2(b)(2).
Although appellant did not request a hearing or object to its absence, he did timely
object to Corley’s testimony as hearsay. This placed the burden on the State, as the proponent of the
outcry testimony, to show that the evidence was admissible under article 38.072 or some other
exception to the hearsay rule. Long v. State, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990). The
State concedes that the only basis for admitting Corley’s testimony was article 38.072. Because the
trial court immediately overruled appellant’s objection instead of conducting a hearing, the State was
not required to prove that the testimony was reliable. See id. The court’s failure to conduct the
section 2(b)(2) hearing was error, as was the admission of Corley’s outcry testimony without a
showing of reliability.
Once again, however, reversible error is not presented. C.B.’s outcry to Corley was
substantially identical to the statements she made a few hours later to Tippie. The introduction in
evidence of the recording of C.B.’s statements to the officer forfeited, waived, or rendered harmless
the error in admitting Corley’s outcry testimony. Leday, 983 S.W.2d at 718. Point of error one is
overruled.

Statements to Nauert
Appellant also contends that the trial court erred by admitting Dr. Nauert’s account
of C.B.’s statements to her at the Children’s Advocacy Center. The court overruled appellant’s
hearsay objection without requiring the State to identify a basis for admission, but the State now
argues that C.B.’s statements to Nauert were made for the purpose of medical diagnosis or treatment. 
Tex. R. Evid. 803(4). Anticipating this argument, appellant urges that the statements were elicited
for the purpose of litigation, not medical diagnosis or treatment. Appellant further argues that C.B.
was not shown to have appreciated the importance of being truthful in her statements to the doctor.
Rule 803(4) excepts from the general hearsay rule statements “made for purposes of
medical diagnosis or treatment and describing medical history, or past or present symptoms, pain,
or sensations, or the inception or general character of the cause or external source thereof insofar as
reasonably pertinent to diagnosis or treatment.” Id. For a statement to be admissible under this
exception, the declarant must make the statement for the purpose of receiving medical treatment and
the content of the statement must be such as is reasonably relied on by a physician in treatment or
diagnosis. Jones v. State, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.).
This Court has recognized that a child’s statements to a physician or other health care
professional describing sexually abusive acts and identifying the abuser can be admissible under rule
803(4). Id.; Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref’d). But these
opinions do not broaden the medical diagnosis or treatment exception to encompass every statement
made by a child victim of sexual abuse, or support the blanket conclusion that every statement made
by a child to a physician regarding a sexual offense was made for the purpose of treatment or
diagnosis. See Jones, 92 S.W.3d at 623. We have also pointed out that a child may not understand
the need to be truthful with a physician, and therefore the assumption underlying the medical
diagnosis and treatment exception may not apply when the declarant is a child. Fleming, 819 S.W.2d
at 247.
C.B. was referred to Nauert by Child Protective Services. C.B. was brought to the
center by her maternal grandmother, but Nauert was alone with the child during the examination. 
The examination consisted of three parts: interview, physical examination, and laboratory testing. 
Nauert stated that it is important that a patient be truthful with her doctor in the interview, but she
was not asked if she believed that C.B. understood this. After the interview, Nauert conducted the
physical examination, which included an examination of C.B.’s genitals with a culdoscope. The
doctor also took vaginal, rectal, and throat cultures to test for sexually transmitted diseases. These
tests were negative.
Appellant argues that because the alleged abuse had taken place five years earlier and
the children had already been removed from appellant’s custody, there was no medical justification
for Nauert’s examination. See Fleming, 819 S.W.2d at 247. But while Nauert knew that C.B. had
made an outcry regarding sexual abuse, it is not clear from the record how much Nauert knew of the
allegations. Moreover, even if Nauert knew that C.B.’s outcry described abuse five years in the past,
it was appropriate for the doctor to examine C.B. to determine if the abuse was continuing or if the
child suffered from a sexually transmitted disease as a result of the prior abuse. Thus, while Nauert
was clearly gathering evidence for a possible prosecution, she was also conducting a legitimate
medical examination. See Hughbank v. State, 967 S.W.2d 940, 943 (Tex. App.—Fort Worth 1998,
no pet.). Nor was it necessary for Nauert to specifically inquire whether C.B. appreciated the need
to be truthful. C.B. was ten years old, and Nauert testified that C.B. was sufficiently mature to be
interviewed outside her grandmother’s presence. The evidence supports a finding that C.B.
understood the need to be truthful. See Behjeler v. State, 3 S.W.3d 182, 189 (Tex. App.—Fort
Worth 1999, pet. ref’d). We conclude that it was not an abuse of discretion to admit Nauert’s
hearsay testimony under rule 803(4). Point of error five is overruled.
 
Expert Opinion
Appellant contends the trial court erred by allowing Dr. Nauert to express an opinion
on a matter outside her area of expertise. See Tex. R. Evid. 702. After establishing that the doctor
had examined children who had been abused by family members and children who had been abused
by strangers, the State asked if she had “notice[d] a difference between a delayed outcry between
those who have been abused by a family member and those who have been abused by a stranger.” 
Over appellant’s objection that Nauert was not qualified to answer this question, she replied, “Not
necessarily. The delay in outcry does have to do with often whether or not the person is still in
contact with the perpetrator, and sometimes whatever situation comes up that makes them feel
comfortable to finally tell somebody about it.”
Before this question was asked and answered, Nauert testified that over a period of
twenty years she had examined hundreds of children who were suspected of being physically or
sexually abused. She also testified that in her experience, it was not unusual for children to delay
their outcry. The question to which appellant objected did not ask Nauert to express an opinion on
the psychological or social reasons for a child to delay her outcry, but instead asked Nauert to state
what she had observed during the course of her career. Even if the question is construed as calling
for an opinion, the trial court did not abuse its discretion by concluding that Nauert was qualified by
her experience to answer it. See id. Point of error six is overruled.
 
Extraneous Misconduct
In point of error four, appellant complains of the admission of what he contends was
improper character conformity evidence. See Tex. R. Evid. 404(b). During her direct examination,
Jamie Corley was asked by the prosecutor if, and how often, she had sex with appellant while living
with him. She said that they had sex almost every night. The prosecutor then asked, “Was that your
choice?” Corley replied, “He—he would get angry a lot of times if—he would get upset if we
didn’t—.” At this point, appellant voiced a relevance objection. The objection was overruled and
Corley continued, “He would get upset. I mean, it was just better to go ahead and clear the air than
to argue.” The testimony then turned to other matters.
Appellant asserts that evidence he pressured Corley to have sex with him on a nightly
basis was irrelevant to any issue in this case and served only to suggest that he was likely to have
sexually assaulted his daughter because of his sexually aggressive character. Appellant did not,
however, promptly object to this line of questioning. See Tex. R. App. P. 33.1; Tex. R. Evid. 103. 
Moreover, in his own testimony, appellant said that he and Corley had a “nonstop” sexual
relationship, although he characterized her as being the more aggressive partner. Given the brevity
of the complained-of testimony, appellant’s own testimony, and the lack of any emphasis on this
subject during argument, we conclude that the admission of the challenged testimony, if error, did
not harm a substantial right. See Tex. R. App. P. 44.2(b). Point of error four is overruled.
 
Confrontation
Appellant contends that by allowing C.B. to testify by means of a closed-circuit
television system, the trial court denied him his Sixth Amendment right to confront the witnesses
against him. U.S. Const. amend. VI. The use of closed-circuit television to take the testimony of
a child victim is authorized by statute under certain circumstances. Tex. Code Crim. Proc. Ann. art.
38.071, §§ 1, 3 (West Supp. 2004-05). Because this procedure denies face-to-face confrontation,
a trial court is constitutionally required to first hear evidence and make a case-specific determination
that: (1) the use of the closed-circuit television system is necessary to protect the welfare of the
particular child witness; (2) the child witness would be traumatized by the presence of the defendant;
and (3) the emotional distress suffered by the child witness in the presence of the defendant is more
than mere nervousness or excitement or some reluctance to testify. Maryland v. Craig, 497 U.S.
836, 855-56 (1990); Hightower v. State, 822 S.W.2d 48, 51 (Tex. Crim. App. 1991).
The trial court conducted a hearing on the necessity for using closed-circuit television,
but did not make express findings of fact and conclusions of law. By permitting the use of the
closed-circuit television system, however, the court implicitly made the constitutionally required
findings.


 Appellant urges that the evidence adduced at the hearing is not sufficient to support these
findings. We will review the court’s ruling for an abuse of discretion. Hightower, 822 S.W.2d at
53.
The only testimony adduced at the hearing was that of Christina Mason, a licensed
professional counselor employed by a foster-care agency. Mason began counseling C.B. on a weekly
basis in October 2002, one year before trial, when the child was temporarily placed in a foster home. 
Although C.B. had since gone to live with her grandmother, the weekly counseling sessions had
continued. Responding to questions by the prosecutor, Mason testified:
 
Q    Have you spoken with [C.B.] regarding testifying in court?
 
A    Yes, I have.
 
Q    Okay. What has her emotional reaction been when you discussed that with her?
 
A    She gets very anxious. She says that she doesn’t want to have to testify in front
of her father. She has become tearful on a couple of occasions when we’ve
talked about it.
 
Q    To what extent—well, let me say this: Do you believe that going through this
trial process is—has important therapeutic value for [C.B.]?
 
A    Yes, I do, because I think she’s going to get some closure on this whole situation
and to really validate that this is not her fault.
 
Q    Okay. With that said, what impact, if any, do you think it would have on [C.B.]
to be called in to testify here in open court with her father in the room?
 
A    She’s going to probably become very upset and anxious. In a sense, it might
even be retraumatizing for her to have to deal with her father while—to have to
see her father again.
 
Q    Okay. Has she been advancing in her treatment as you’ve given it to her?
 
A    Yes, she has. And the kids actually made a lot of advancement as soon as their
visits with their father had stopped, and they were no longer seeing him
regularly.
 
Q    Okay. What effect on that advancement do you think testifying in front of her
father would have?
 
A    I think we would see a regression. We would probably see an increase in her
anxiety and depressed mood again.
 
 
During cross-examination, Mason testified that when she first began working with C.B., the child
would “become very anxious” and “would start to shut down” when asked to discuss her father. 
Mason said that she had seen “that same sort of knee-jerk anxiety” and “shutting-down reaction”
when speaking to C.B. about testifying at appellant’s trial. Mason acknowledged that she did not
“know for a fact” that testifying in front of her father would traumatize C.B., but she believed that
it was “a strong possibility.” Mason also mentioned that C.B. had recently experienced an episode
of bed-wetting, which Mason attributed to her anxiety about testifying.
Appellant argues that Mason’s testimony shows no more than that C.B. was reluctant
to testify and would be nervous and uncomfortable in the courtroom. We disagree. Mason clearly
testified to her belief that C.B. would be traumatized if she were required to appear in open court and
testify in appellant’s presence. We conclude that Mason’s testimony supports findings that C.B.
would be traumatized by appellant’s presence and not just by the courtroom generally, that the
emotional distress that C.B. would suffer in appellant’s presence would be more than de minimis,
and that the use of the closed-circuit television system was therefore necessary to protect C.B.’s
welfare. On this record, the trial court did not abuse its discretion by overruling appellant’s Sixth
Amendment objection and permitting C.B. to testify by means of closed-circuit television. Point of
error seven is overruled.
 
Witness Rule
Appellant urges that the trial court erred by excusing Mason from the witness
exclusion rule. Tex. R. Evid. 614. The rule requires a trial court, at the request of a party, to exclude
witnesses from the courtroom so that they cannot hear each other’s testimony. During a break in
C.B.’s testimony, the State asked the court to excuse Mason from the rule “for purposes of this
witness’s testimony.”


 The court granted the motion over appellant’s objection and Mason later
testified for the State.
The State asserts that appellant did not preserve error because he failed to object when
Mason was called to testify. The State argues that when he objected to Mason’s presence in the
courtroom during C.B.’s testimony, “he only had an assumption that she would later be called as a
witness.” But since the State had taken the trouble to ask the court’s permission to excuse Mason
from the rule, the assumption was well-founded. Appellant’s objection to Mason’s presence during
C.B.’s testimony was sufficient to preserve the error.
The State made no effort to demonstrate that Mason’s presence in the courtroom was
essential to the presentation of the State’s case. Tex. R. Evid. 614(3). She was not otherwise exempt
from the rule. Under the circumstances, the court abused its discretion by permitting Mason to
remain in the courtroom during C.B.’s testimony. See Moore v. State, 882 S.W.2d 844, 848 (Tex.
Crim. App. 1994).
Appellant argues that the violation of the rule was harmful because Mason’s
testimony, during which she described C.B.’s reluctance to discuss the sexual abuse allegations
during counseling sessions, “mirrored the complainant’s behavior while testifying.” Appellant urges
that because Mason saw C.B. testify, she was able “to provide a psychological spin during her own
testimony.” As we have already discussed, however, Mason first testified at the hearing on the
State’s request to use closed-circuit television. Mason’s testimony at that hearing, which was before
she heard C.B. testify, was substantially identical to her later trial testimony. On this record, we can
state with fair assurance that hearing C.B. testify did not materially affect Mason’s testimony, and
thus did not affect appellant’s substantial rights. Tex. R. App. P. 44.2(b); see Ladd v. State, 3
S.W.3d 547, 566 (Tex. Crim. App. 1999). Point of error two is overruled.
 
Jury Argument
Appellant urges that the prosecutor improperly expressed his personal opinion
regarding appellant’s guilt during jury argument. Immediately before he concluded his final
argument at the guilt-innocence stage, the prosecutor stated, “I don’t know why he did this. I don’t
want to know. I know he did this. Find him guilty, come back, and we’ll talk about what to do about
it.” At this point, appellant’s counsel objected, “Objection, Your Honor, impermissible jury
argument. The defense moves for a mistrial. That is ridiculous.” The motion for mistrial was
overruled.
Assuming that the prosecutor’s remark was improper and that appellant’s objection
was sufficient to bring the impropriety to the court’s attention, we conclude that an instruction to
disregard would have been sufficient to cure the error. See Dinkins v. State, 894 S.W.2d 330, 357
(Tex. Crim. App. 1995) (instruction to disregard will generally cure error in jury argument). The
argument was not so extreme or manifestly improper as to render futile an instruction to disregard. 
See Hernandez v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991). Because the error could have
been cured by instruction, the court’s failure to grant a mistrial was not error. See Young v. State,
137 S.W.3d 65, 70 (Tex. Crim. App. 2004). Point of error eight is overruled.
 
Double Jeopardy
The indictment in this cause contained nine counts. Counts one, four, and seven
alleged that appellant intentionally or knowingly penetrated C.B.’s sexual organ with his penis on
or about July 1, 1997, 1998, and 1999, respectively. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(I)
(West Supp. 2004-05). Counts two, five, and eight alleged that, on the same three dates, appellant
intentionally or knowingly penetrated C.B.’s mouth with his sexual organ. See id.
§ 22.021(a)(1)(B)(ii). Counts three, six, and nine alleged that, on the same three dates, appellant
intentionally or knowingly caused C.B.’s sexual organ to contact his sexual organ. See id.
§ 22.021(a)(1)(B)(iii). 
Before testimony began, the State abandoned counts seven, eight, and nine. The
remaining counts were submitted to the jury, which was instructed that the State was not required
to prove the exact dates alleged in the indictment but could prove that the offenses occurred at any
time prior to the presentment of the indictment and within the applicable limitations period. See
Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). While deliberating appellant’s guilt,
the jury sent a note to the court saying there was a disagreement among them regarding Nauert’s
testimony as to “how many times that [C.B.] told her it happened.” The court had the reporter read
to the jury Nauert’s testimony that she did not discuss this subject with C.B. The jury thereafter
returned verdicts convicting appellant on counts one, two and three and acquitting him on counts
four, five, and six.
The Double Jeopardy Clause protects against a second prosecution for the same
offense following a conviction, a second prosecution for the same offense following an acquittal, and
multiple punishments for the same offense. Illinois v. Vitale, 447 U.S. 410, 415 (1980); Cervantes
v. State, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991). Appellant contends that his conviction on
counts one and three violated the guarantee against multiple punishments for the same offense
because there is no evidence of genital-to-genital contact as alleged in count three other than that
incident to the vaginal penetration for which he was convicted under count one.
A person who commits more than one discrete sexual assault against the same
complainant may be convicted and punished for each separate act, even if the acts were committed
in close temporal proximity. Vick v. State, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999); Vernon
v. State, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992). The statutes do not, however, authorize
“‘stop-action’ prosecutions.” Patterson v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004). A
conviction for a completed sexual assault bars conviction for conduct that is demonstrably part of
the commission of that offense. Id. Thus, penile contact with mouth, genitals, or anus in the course
of penile penetration is subsumed in a conviction for the penetration. Id.
In Hutchins v. State, 992 S.W.2d 629, 632 (Tex. App.—Austin 1999, pet. ref’d), the
defendant was convicted of aggravated sexual assault of a child and indecency with a child by
contact based on evidence showing only a single act of penetration. Because the only contact proved
was that incident to the penetration, this Court set aside the indecency by contact conviction on
double jeopardy grounds. Id.; see also Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App.
1998). In Patterson v. State, 96 S.W.3d 427, 432 (Tex. App.—Austin 2002), aff’d, 152 S.W.3d 88
(Tex. Crim. App. 2004), the defendant was convicted of aggravated sexual assault of a child by
penetration, indecency with a child by contact, and indecency with a child by exposure based on
evidence showing that the only contact or exposure was that incident to the penetration. This Court
held that the indecency convictions were jeopardy-barred. Id. at 432-33.
Although Hutchins and Patterson involved convictions for greater inclusive and
lesser included offenses, the same principle applies to convictions for aggravated sexual assault by
penetration and by genital-to-genital contact. If both convictions are based on the same act, they
constitute impermissible multiple convictions for the same offense. Genital-to-genital contact in the
course of penile penetration is subsumed in the act of penetration. Patterson, 152 S.W.3d at 92.
The court’s charge in this cause authorized the jury to convict appellant of two
separate acts of sexual assault by genital penetration, two separate acts of sexual assault by oral
penetration, and two separate acts of sexual assault by genital-to-genital contact. The prosecutor
explained the court’s charge to the jury during his argument: 
 
[W]hen he puts it in her mouth and then he pulls away and then he puts it against and
presses and doesn’t quite make it in, and then a little later, comes back and forces his
penis inside of her, that’s three different acts. That’s three different charges. That’s
three different guilty verdicts. And if he did it more than one time, that’s four and
five and six.
 
 
The jury’s note to the trial court clearly shows that the jury was concerned with whether the State
proved that each alleged act was in fact committed twice. On this record, the jury’s decision to
convict appellant of the acts alleged to have been committed on or about July 1, 1997, but acquit him
of the acts alleged to have been committed on or about July 1, 1998, compels the conclusion that the
jury found appellant guilty of committing each of the three alleged acts only once.
The State does not refer us to any evidence that appellant touched C.B.’s sexual organ
with his sexual organ without penetration. C.B. told Corley that she “was touched in her vaginal
area” and “it bled and hurt.” This testimony suggests penetration. C.B. told Officer Tippie that
appellant “forced me to have sex with him” and “put his penis in my mouth and here.” Once again,
the evidence suggests penetration. Doctor Nauert testified that C.B. described being touched “in her
mouth and her vaginal area,” and that she, Nauert, understood this to mean penetration. C.B.’s own
testimony was that appellant “raped me,” which in lay terms again suggests penetration. We do not
find any evidence supporting the conclusion that appellant touched C.B.’s sexual organ with his
sexual organ except as an incident to the penetration of C.B.’s sexual organ. Because the jury
convicted appellant of only one act of genital penetration, it necessarily follows that the convictions
on that count and on the genital-to-genital contact count were based on the same act. Appellant’s
conviction on count three therefore constituted an unauthorized second conviction for the same
offense in violation of the Double Jeopardy Clause. Patterson, 152 S.W.3d at 92; Patterson, 96
S.W.3d at 432-33; Hutchins, 992 S.W.2d at 632.
We sustain point of error nine. When a defendant is convicted of two offenses in
violation of the double jeopardy guarantee, the general rule is to set aside the conviction for the
offense carrying the less serious punishment. Landers v. State, 957 S.W.2d 558, 560 (Tex. Crim.
App. 1997). In the instant cause, the two offenses carry the same punishment. Therefore, we will
set aside the conviction on count three.
There is a single judgment of conviction. The judgment is reformed to reflect
convictions on counts one and two only and to delete all references to conviction and sentence on
count three, and that count is dismissed. As reformed, the trial court’s judgment is affirmed.
 
 
                                                __________________________________________
                                                W. Kenneth Law, Chief Justice
Before Chief Justice Law, Justices B. A. Smith and Puryear
Reformed and, as Reformed, Affirmed
Filed: April 7, 2005
Publish