

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-399-CR

STEVEN RAY GAITAN                                        APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Steven Ray Gaitan appeals his conviction for two counts of murder.  In two points, Gaitan argues that his Confrontation Clause constitutional rights were violated when the trial court allowed a child witness to testify by closed-circuit television.  For the reasons set forth below, we hold that the trial court did not err by permitting the child witness to testify by

closed-circuit television and, alternatively, we hold that any error was harmless. Accordingly, we affirm the trial court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2004, at about 10:30 p.m., X.P., who was eight years old, and his brother C.P., who was two or three years old, drove with their mother, Stella P., to the home of a family friend. As Stella P. and her sons arrived at the residence, Gaitan and a passenger, Manuel Garza Gonzales, simultaneously pulled up in front of the residence. Gaitan, Stella P., and her sons all exited the vehicles. The boys went to the front yard of the residence while Stella P. and Gaitan talked. A confrontation occurred between Stella P. and Gaitan, and Gaitan shot Stella P.; she fell into the street, bleeding. Gaitan tried to place Stella P. into the backseat of her vehicle, but when he was unsuccessful, he simply drove away. Stella P. was left lying in the street where she died.

During the trial, the jury heard testimony via closed-circuit television from X.P. and live testimony from Gonzales, along with others. At the conclusion of the evidence, the jury convicted Gaitan for the murder of Stella P., and the trial court sentenced Gaitan to life imprisonment and assessed a $10,000 fine. This appeal followed.

2

## III. RIGHT TO CONFRONT WITNESSES

In his first point, Gaitan argues that the trial court erred by permitting X.P., a child witness, to testify by closed-circuit television.[1] Gaitan contends that the State failed to prove the necessity for this procedure and that, consequently, he was improperly denied his right to face-to-face confrontation of the child witness against him. In his second point, Gaitan contends that Texas Code of Criminal Procedure article 38.071, section 3—the statute authorizing a child to testify by closed-circuit television—is unconstitutional as applied to him in this case because the State failed to prove an interest in protecting X.P. from Gaitan's presence.[2] These points are interrelated, so we discuss them together below.

---

[1] It appears from the record before us that during X.P.'s testimony, X.P., the attorneys and the judge went to an adjoining room and that X.P.'s live testimony was broadcast from the adjoining room to the courtroom and was viewed by Gaitan and the jury on a screen in the courtroom. During X.P.'s testimony, the trial court repeatedly told Gaitan's counsel that he could request a break at any time to confer with his client.

[2] Gaitan properly raised his as-applied constitutional challenge in the trial court. *Accord Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995); *Barnett v. State*, 201 S.W.3d 231, 232-33 (Tex. App.—Fort Worth 2006, no pet.) (both recognizing that as-applied constitutional challenge is waived if it is not raised in the trial court).

**A.    The Law**

The Texas Code of Criminal Procedure authorizes a trial court to order that the testimony of a child younger than thirteen years of age be taken in a room other than the courtroom and be televised by closed-circuit equipment in the courtroom to be viewed by the court and the finder of fact if the trial court determines that the child would be unavailable to testify in the presence of the defendant about an offense, including murder.  TEX. CODE CRIM. PROC. ANN. art. 38.071, §§ 1(1), 3(a) (Vernon Supp. 2007); *see also Barnes v. State*, 165 S.W.3d 75, 84-85 (Tex. App.—Austin 2005, no pet.).   In making a determination of unavailability, the trial court shall consider relevant factors, including the relationship of the defendant to the child; the character and duration of the alleged offense; the age, maturity, and emotional stability of the child; the time elapsed since the alleged offense; and whether the child is more likely than not to be unavailable to testify because of emotional or physical causes, including confrontation with the defendant, or the child would suffer undue psychological or physical harm through his involvement at the hearing or proceeding. TEX. CODE CRIM. PROC. ANN. art. 38.071, § 8(a)(1)-(2).

Because this statute operates to deprive a defendant of face-to-face confrontation, the trial court must hear evidence and make a case-specific determination:  (1) that the use of the statutory procedure utilized is necessary

4

to protect the welfare of the particular child witness who seeks to testify; (2) that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) that the emotional distress suffered by the child witness in the presence of the defendant is "more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify." *Hightower v. State*, 822 S.W.2d 48, 51 (Tex. Crim. App. 1991); *Gonzales v. State*, 818 S.W.2d 756, 762 (Tex. Crim. App. 1991). These findings are not required by the statute but are constitutionally required. *See also Maryland v. Craig*, 497 U.S. 836, 855-56, 110 S. Ct. 3157, 3169 (1990); *Hightower*, 822 S.W.2d at 51. If the trial court makes these findings, then the Confrontation Clause does not prohibit the use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous cross-examination. *Gonzales*, 818 S.W.2d at 762.

**B.    The Facts**

The trial court conducted a pretrial hearing on "The State's Motion to Have Testimony of Child Witness Taken Outside the Courtroom." At the hearing, the trial court heard testimony from Wichita Falls police officer Betty King and heard expert testimony from Walter Swinhoe, a licensed counselor and therapist.

5

Officer King testified that she talked to X.P. at the scene of his mother's murder. Officer King said that X.P. had witnessed "a particularly violent offense" and that he was in shock when she spoke to him. X.P. was concerned about his mother and kept asking Officer King when he would get to see her. Officer King said that both X.P. and C.P. were worried about what was wrong with their mother because they had observed her "laying at the end of the driveway there on the ground and they weren't really sure what was wrong with her."

Walter Swinhoe testified that he was the director of the Taft Counseling Center. Swinhoe testified that X.P.'s grandmother had arranged for X.P. to receive counseling from him because X.P. was experiencing negative reactions from his mother's death, including nightmares, and needed help in grieving for his mother. Swinhoe counseled X.P. on April 26, 2006; May 2, 2006; and May 9, 2006. Swinhoe testified that X.P. showed increased "arousal signs," increased agitation, and signs of post-traumatic stress disorder (PTSD).[3] X.P. was very guarded and avoided talking about the incident, other than to say that he had heard a firecracker and saw something at the scene. Swinhoe said that

---

[3] Swinhoe testified that he was not able to trace the trauma creating the PTSD to this incident and that before this incident occurred, X.P. started out with a difficult lifestyle that involved frequently moving.

6

X.P.'s avoidance of talking about the incident is "one of the greatest signs of trauma." Swinhoe testified that he asked X.P.'s grandmother to stop talking about the incident because X.P. would cover his face, get visibly agitated, and show some aggravation or anger when his grandmother would bring up "momma or the incident."

When asked whether it would be harmful to X.P.'s welfare to have him testify while in the same room with Gaitan, Swinhoe testified:

> I believe that if the perpetrator was in this room and due to the signs and symptoms, it would definitely exacerbate the signs and symptoms that are already present and create more night terrors, more of the internal conflict. He might not show it, but it would definitely exacerbate it.

Swinhoe explained that X.P.'s distress from testifying in Gaitan's presence would be much more severe than just nervousness, excitement, or reluctance to testify and that it might even create a secondary trauma.[4] Swinhoe testified that if the trial court required X.P. to testify in Gaitan's presence, X.P. would suffer undue psychological harm and that his emotional stability could be harmed.

---

[4] Swinhoe explained that the secondary trauma that might result from X.P.'s having to testify in Gaitan's presence "might be worse or more difficult to process than even the first trauma, because it's almost like survivor's guilt. And . . . when he comes up with his own fears in reality, it would be worse than the reality itself." Swinhoe also stated that "the event that create[s] that [anxiety and agitation] would create a lot more distress in a courtroom."

Swinhoe said that the primary risk of trauma for X.P. in the courtroom setting would be confrontation with the perpetrator of the offense and that if confrontation with the perpetrator could be avoided, that would prevent undue harm to X.P. Swinhoe explained that for X.P., it would be particularly traumatic to be put in a room with Gaitan and a lot of people and ask X.P. to go through the events of October 5, 2004, because X.P. would develop a new fear based on Gaitan's presence and the fear of getting in trouble for telling the people who are present about what Gaitan did. Swinhoe based this conclusion on X.P.'s request, expressed during counseling, to find a safe place where no one could hear him or see him cry when he talked about his mother.

At the conclusion of the hearing, the trial court ruled:

> Well, having heard the testimony given, I've taken into account all of the factors, including the relationship of the Defendant to the child, the character and duration of the alleged offense and the age, maturity and emotional stability of the child and the time elapsed and I come to the inescapable conclusion that significant trauma would be had should [X.P.] be required to testify in the same room with the presence of the Defendant in this matter.

> So I order that the testimony be taken by closed-circuit television. We will certainly give Mr. Gaitan every opportunity to confer with his attorney and Mr. Rasmussen will be able to take a break at any time he wishes to do so to confer with his client on that matter.

8

The trial court also signed an order granting the State's motion.  The order states, in part:

> [T]he court finds that the child witness in this cause is unavailable to testify because he would suffer undue psychological and physical harm through his involvement at trial.  The procedure provided for the child victim's testimony to be taken in article 38.071, section 3 of the Texas Code of Criminal Procedure is necessary to protect his welfare.  Moreover, the Court notes that the child would be traumatized by the presence of the defendant in the courtroom, and that his level of emotional distress would be more than de minimis.

### C.    Application of the Law to the Facts

The State's evidence, outlined above, satisfies the statutory and constitutional requirements needed to authorize the use of closed-circuit television for the presentation of X.P.'s testimony.  The evidence establishes that X.P. is "unavailable" to testify under the statutory definition because—considering the relevant factors—he would suffer undue psychological or physical harm through his involvement at the trial.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 8(a)(2).  And the evidence likewise illustrates that the trial court made a case-specific determination that the use of closed-circuit television to present X.P.'s testimony was necessary to protect X.P.'s welfare, that X.P. would be traumatized by being forced to testify in Gaitan's presence, and that the emotional distress that X.P. would suffer if forced to testify in Gaitan's presence would be more than de minimis and more

9

than mere nervousness, excitement, or some reluctance to testify. *See, e.g.*, *Hightower*, 822 S.W.2d at 51; *Gonzales*, 818 S.W.2d at 762. Thus, we hold that the State met its burden and that the trial court's decision—especially considering that X.P.'s testimony was presented live via closed-circuit television and that Gaitan had the opportunity to and did cross-examine X.P. at trial—did not violate Gaitan's Confrontation Clause rights. *See Gonzales,* 818 S.W.2d at 762 (discussing *Maryland v. Craig*); *Francis v. State*, No. 07-05-00293-CR, 2007 WL 1490461, at *2 (Tex. App.—Amarillo May 22, 2007, no pet.) (mem. op.) (not designated for publication). We further hold that, because the State met its burden to present sufficient evidence of the requisite statutory and constitutional factors, Gaitan's as-applied constitutional challenge fails; article 38.071, section 3 did not operate unconstitutionally as applied to Gaitan in this case.

## D. No Harm in Any Event

Moreover, even assuming that the trial court erred by allowing X.P. to testify by closed-circuit television, X.P.'s testimony was such that it would not have affected the jury's deliberations or verdict. TEX. R. APP. P. 44.2(a); *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006) (explaining that "[i]f an appellate court rules that a constitutional error in the admission of evidence is harmless, it is, in essence, asserting that the nature of that evidence is such

10

that it could not have affected the jury's deliberations or verdict"); *see also* *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

Gaitan himself testified at the guilt-innocence phase of his trial that he shot Stella P., albeit accidentally. And Gonzales's testimony mirrored X.P.'s testimony. Gonzales testified that he heard a gunshot but did not see Gaitan shoot Stella P. Gonzales testified that he observed Gaitan trying to place Stella P. into the car and that he saw Gaitan drive away, leaving Stella P. lying in the street. Thus, after carefully reviewing the record and performing the appropriate harm analysis, even if the trial court erred by permitting X.P. to testify via closed-circuit television, we hold that beyond a reasonable doubt the trial court's error did not contribute to Gaitan's conviction or punishment because other evidence admitted during the trial showed that Gaitan shot and murdered Stella P. *See* TEX. R. APP. P. 44.2(a); *see Davis v. State*, 203 S.W.3d 845, 853-56 (Tex. Crim. App. 2006) (holding that *Crawford* error—admitting victim's testimonial statements to officer that supported deadly weapon finding—was harmless beyond a reasonable doubt because other evidence at trial showed that appellant attempted to strangle victim with rope), *cert. denied*, 127 S. Ct. 2037 (2007); *Wall*, 184 S.W.3d at 745-46 (holding that error in admitting statement made by victim at hospital was not harmful because the

11

other witnesses who testified at trial overwhelmingly established appellant's guilt, even disregarding the erroneously admitted evidence).

We overrule Gaitan's first and second points.

## IV. CONCLUSION

Having overruled both of Gaitan's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

PUBLISH

DELIVERED: March 20, 2008

12