**Opinion filed January 26, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00141-CV
_____

## HENDRICK MEDICAL CENTER, Appellant

## V.

## SHARON AND STEVE MILLER, INDIVIDUALLY
## AND AS NEXT FRIEND OF ANDREW MILLER, Appellees

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9119D**

## MEMORANDUM OPINION

This interlocutory appeal involves a health care liability claim brought by Sharon and Steve Miller, individually and as next friend of Andrew Miller, their eight-year-old son, against Hendrick Medical Center. Hendrick appeals the trial court's order overruling (implicitly) its objections to appellees' expert reports and denying its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011). We reverse and render in part and reverse and remand in part.

Hendrick presents four issues for our review. In its first issue, Hendrick argues that the trial court abused its discretion when it found that a sufficient expert report had been filed and

overruled Hendrick's objections. Second, Hendrick alleges that the trial court abused its discretion when it found that a sufficient expert report had been filed and denied Hendrick's motion to dismiss under Section 74.351(b). Hendrick contends in its third issue that the trial court abused its discretion when it found that the direct liability claim asserted against Hendrick was supported by a sufficient expert report and failed to dismiss the direct claim. In its final issue, Hendrick alleges that the trial court abused its discretion when it found that the vicarious liability claims asserted against Hendrick were supported by a sufficient expert report and failed to dismiss the vicarious liability claims.

Although Hendrick presents these four issues for review at the outset of its brief, Hendrick combines the issues in its argument and essentially briefs two issues. The first issue that Hendrick briefs is whether the trial court erred and abused its discretion when it found the expert reports were sufficient under Section 74.351 as to the direct liability claim. Second, Hendrick addresses whether the trial court erred and abused its discretion when it found the expert reports sufficient as to the vicarious claims asserted against Hendrick. We will review the issues as briefed and determine whether the trial court erred when it overruled Hendrick's objections and denied its motion to dismiss as to (1) the direct claim and (2) the vicarious claims.

We note at the outset that appellees argue that we should not analyze the direct liability claim apart from the vicarious liability claims. However, we will analyze the claims separately in accordance with this court's precedent. *See Hendrick Med. Ctr. v. Conger*, 298 S.W.3d 784, 787 (Tex. App.—Eastland 2009, no pet.); *Hendrick Med. Ctr. v. Hewitt*, No. 11-07-00333-CV, 2008 WL 4439843 (Tex. App.—Eastland Oct. 2, 2008, no pet.) (mem. op.).

According to appellees' petition, Andrew complained to his mother of pain in his left testicle, which appeared swollen. Sharon Miller immediately called Andrew's pediatrician who advised her to take Andrew to an urgent care facility or to an emergency room for evaluation. She took Andrew to Abilene Diagnostic Walk-In Clinic where the physician told her to take Andrew directly to the emergency room at Hendrick. Sharon was advised that testicular torsion was a possible diagnosis, that time was of the essence in addressing this condition, and that she should not delay in getting her son to the emergency room. She drove Andrew to the emergency room, and they waited for two and one-half hours before being seen by the emergency room physician. The emergency room physician ordered a sonogram, and after the radiologist and the physician reviewed the sonogram, Andrew was diagnosed with left epididymitis/orchitis, left

2

hydrocele, and bilateral microlithiasis. Andrew was discharged from the hospital with prescriptions for an antibiotic and for pain medicine and with instructions to schedule a urology follow-up. Andrew saw a urologist four days later. The urologist reread the sonogram that had been performed in the emergency room and determined that it had been misread. He diagnosed Andrew with testicular torsion. The testicle was no longer viable and had to be surgically removed.

Andrew's parents brought suit against Hendrick, the emergency room physician, and the radiologist, alleging that each were negligent in treating Andrew. The emergency room physician and the radiologist are not parties to this appeal. Appellees alleged in their original petition that Hendrick was negligent in one or more of the following ways, which proximately caused Andrew's injuries: (1) by failing to provide medical care in a timely fashion, given the presentation of the patient and the well-known consequences of failure to treat testicular torsion as an urgent diagnosis; (2) by failing to provide medical care in a timely fashion, given the fact that Sharon initially reported the urgency to the triage desk and then reminded them of the urgency during the two and one-half hour waiting period in the emergency room; (3) by failing to have in place a procedure or protocol that would implement timely emergency medical care for a child complaining of testicular pain; (4) for the acts of its hospital employees who were involved in the decision to allow a two and one-half hour delay between triage and an initial examination by an emergency physician under respondeat superior liability; and (5) by failing to react appropriately to concerns expressed by Sharon about Andrew's condition.

In its brief, Hendrick categorizes these allegations into direct and vicarious claims. Hendrick asserts that the only direct claim alleged by appellees is that Hendrick was negligent in failing to have in place a procedure or protocol that would implement timely emergency medical care. The other four allegations are essentially variations of the claim that Hendrick's staff failed to provide medical care in a timely fashion and, thus, are vicarious liability claims. We will review the claims as categorized by Hendrick.

Pursuant to Section 74.351(a), appellees timely served three expert reports prepared by Dr. James W. Tsung, Dr. Leslie McQuiston, and Dr. Richard M. Cantor. Hendrick filed objections to all three reports and, during the hearing, orally moved to dismiss appellees' claims based upon its written objections. The trial court found the reports to be sufficient and denied Hendrick's motion to dismiss. This appeal followed.

3

We review a trial court's decision to deny a motion to dismiss under Section 74.351(b) for an abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Conger*, 298 S.W.3d at 787. To determine whether a trial court abused its discretion, we must decide whether the trial court acted in an unreasonable or arbitrary manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

A trial court must "grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." Section 74.351(*l*). The statutory definition requires that the expert report provide a fair summary of the expert's opinion regarding the applicable standard of care, the manner in which the care rendered failed to meet that standard, and the causal relationship between the failure to meet the standard of care and the injury suffered. *Id.* § 74.351(r)(6). A report must be served as to each physician or health care provider against whom a liability claim is asserted. *Id.* § 74.351(a). However, a plaintiff may serve multiple reports by separate experts regarding different defendants, different claims, and different issues, as long as the reports, read together, provide a fair summary of the standard of care, breach, and causation. *Id.* §§ 74.351(i), (r)(6); *see also Packard v. Guerra*, 252 S.W.3d 511, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("[S]ection 74.351(i) does not require that a single expert address all liability and causation issues with respect to a defendant."); *Martin v. Abilene Reg'l Med. Ctr.*, No. 11-04-00303-CV, 2006 WL 241509, at *4 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.) ("Section 74.351(i) expressly provides that a claimant may satisfy any requirement of the Act by providing reports of separate experts.").

A "good faith effort" under Section 74.351(*l*) "simply means a report that does not contain a material deficiency." *Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011). If the report fulfills its two purposes, it represents a good faith effort. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001) ("In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort."). The two purposes of the expert report are to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Leland v. Brandal*, 257 S.W.3d

204, 206–07 (Tex. 2008) (citing *Palacios*, 46 S.W.3d at 879). "In contrast, a report that omits an element or states the expert's opinions in conclusory form is not a good faith effort." *Samlowski*, 332 S.W.3d at 410 (citing *Palacios*, 46 S.W.3d at 879).

Hendrick argues that the trial court erred when it overruled its objections and denied its motion to dismiss because it erroneously found that the expert reports filed by appellees were sufficient as to the direct liability claim and vicarious liability claims asserted against Hendrick. Appellees argue that the direct claim should not be analyzed separately from the vicarious claims and that the pleadings should not be micro-analyzed in an effort to devalue the reports. In addition, appellees assert that Hendrick is well aware of the allegations against it, regardless of whether the reports specifically use the words "procedures and protocols" to address the direct claim. Furthermore, appellees assert that, because the reports inform Hendrick of the conduct at issue, the reports are sufficient. In support of their argument, appellees point out that, in general, plaintiffs can amend pleadings and add new theories within a medical malpractice cause of action as discovery progresses and that plaintiffs are not limited to only those allegations raised in an original petition.

This court has separately evaluated direct liability and vicarious liability claims to determine whether each claim is supported by a sufficient report under Section 74.351. *See Conger*, 298 S.W.3d 784; *Hewitt*, 2008 WL 4439843. The Second, Fifth, Ninth, Thirteenth, and Fourteenth Courts of Appeals have also evaluated direct and vicarious liability claims separately.[1] The First Court of Appeals has held that direct and vicarious claims are different theories, not separate claims, and that, "if at least one liability theory within a cause of action is shown by the expert report, then the claimant may proceed with the entire cause of action against the defendant, including particular liability theories that were not originally part of the expert report." *Certified EMS, Inc. v. Potts*, No. 01-10-00106-CV, 2011 WL 1938264, at *7 (Tex.

---

[1] *See, e.g.*, *TTHR Ltd. P'ship v. Moreno*, No. 02-10-00334-CV, 2011 WL 2651813 (Tex. App.—Fort Worth July 7, 2011, pet. filed) (mem. op. on reh'g,) (holding that plaintiff was required to serve an expert report as to each of the direct liability claims and the vicarious liability claims); *River Oaks Endoscopy Ctrs., L.L.P. v. Serrano*, No. 09-10-00201-CV, 2011 WL 303795 (Tex. App.—Beaumont Jan. 27, 2011, no pet.) (mem. op.) (holding the trial court abused its discretion in denying the motion to dismiss the direct claims because the expert report failed to implicate direct claims even though it implicated vicarious claims); *Petty v. Churner*, 310 S.W.3d 131 (Tex. App.—Dallas 2010, no pet.) (holding trial court did not abuse its discretion when it dismissed the direct liability claims because the reports did not address those claims); *RGV Healthcare Assocs., Inc. v. Estevis*, 294 S.W.3d 264 (Tex. App.—Corpus Christi 2009, pet. denied) (holding expert report was deficient as to direct liability claims because it did not address how the healthcare provider's direct conduct deviated from the applicable standard of care); *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 103 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (stating that, if plaintiff had asserted direct claims, then plaintiff would be required to serve an expert report specifically addressing the direct claims in addition to a report addressing the vicarious claims).

App.—Houston [1st Dist.] May 19, 2011, pet. filed) (op. on reh'g) (citing Section 74.351(b); *Yamada v. Friend*, 335 S.W.3d 192, 195–96 (Tex. 2010); and *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008)). We decline to follow the First Court's reasoning and, thus, will evaluate the sufficiency of the expert reports as to each claim.

In its first issue, Hendrick contends that the trial court erred when it failed to dismiss the direct liability claim because appellees failed to serve upon Hendrick an expert report addressing the "procedures and protocols" claim. We agree. None of the three experts address appellees' claim that Hendrick was negligent by "[f]ailing to have in place a procedure or protocol that would implement timely emergency medical care for a child complaining of testicular pain." As Hendrick points out, the words "procedure" and "protocol" do not appear in any of the three expert reports.

Although two of the experts opine that Andrew did not receive timely care, they do not opine that Hendrick failed to have in place a procedure or protocol that would implement timely care. Dr. McQuiston stated in her report that her "greatest concerns as a surgeon reviewing this file are associated with the delay in the emergency room evaluation and the missed sonographic diagnosis"; however, she does not discuss Hendrick's failure to have in place procedures or protocols. Dr. Cantor stated, "[I]n spite of the fact that ischemic damage could have been in process, [Andrew] was allowed to wait in the waiting room before evaluation for a period of over 2½ hours." He also stated that the standard of care was to "[p]rovide expeditious evaluation and treatment for an ongoing ischemic event" because "[d]elays in evaluation of this process result in a much higher probability of cell death in the ischemic target organ" and to "[p]rovide timely and expedient remedy of the situation to save salvageable tissue." Dr. Cantor further stated that Hendrick and the hospital staff breached the standard of care by failing "to provide expeditious triage and placement in an examination room" and failing "to provide accurate and timely recognition of abnormal sonographic finding." However, none of these statements are sufficient to inform Hendrick of its failure to have in place a procedure or protocol that would implement timely medical care. Dr. Tsung does not address the timeliness of the emergency medical care in his report.

In *Hendrick Medical Center v. Hewitt*, we held that the trial court abused its discretion in failing to dismiss Hewitt's direct claims against Hendrick because the expert reports failed to address those claims. 2008 WL 4439843, at *2. The same is true here. Therefore, we hold that

6

appellees did not file an expert report as to the direct liability claim and that the trial court abused its discretion when it did not dismiss that claim. Hendrick's first issue on appeal is sustained, and the direct liability claim regarding "procedures and protocols" is dismissed. Because there was no expert report filed regarding the direct liability claim, we remand the issue to the trial court for it to determine the amount of attorney's fees to award Hendrick in connection with the dismissed claim. *See* § 74.351(b).

In addition to the direct claim, appellees filed vicarious health care liability claims and generally asserted that Hendrick failed to provide medical care in a timely fashion when its employees allowed a two and one-half hour delay between triage and an initial examination by an emergency physician. Hendrick alleges that the three expert reports were insufficient with respect to the vicarious liability claims asserted. Specifically, Hendrick argues that none of the experts stated how they were qualified to render opinions as to Hendrick or its hospital staff. In addition, Hendrick asserts that the experts failed to identify specific hospital personnel that were involved in the alleged two and one-half hour delay in medical care. Hendrick also contends that the experts' opinions regarding standard of care, breach, and causation were conclusory and, thus, deficient under Section 74.351(r)(6).

We will first address Hendrick's argument that the reports are insufficient to support the vicarious liability claims against Hendrick because none of the experts identified the specific hospital personnel involved in Andrew's care. In *Hendrick Medical Center v. Conger*, we held that the expert report was deficient as to Conger's vicarious liability claims because the expert did not state in his report which members of the hospital staff were involved in Conger's care, what the individual staff members' duties were, what the standard of care was for each staff position, or how he was familiar with the applicable standards. 298 S.W.3d at 789. Hendrick alleges that the expert reports here are deficient for the same reasons. We agree.

Dr. Tsung and Dr. Cantor globally address the standard of care for Hendrick and its hospital staff but do not specify what types of employees were involved in Andrew's care, what the standard of care was for each of those positions, or how those employees breached the applicable standard. Dr. McQuiston only addresses causation in her report. We stated in *Conger* that, "[w]ithout setting out at least the job descriptions of those involved in this case . . . and for whom and why Hendrick is alleged to be responsible, it would be impossible for [the expert] to state the standard of care applicable to those persons and that he was qualified to give an expert

7

opinion on that standard of care." *Id.* Here, none of the experts stated which employees, or even what type of employees (i.e., triage personnel, administrative personnel, nurses, nurse practitioners, physicians' assistants, etc.), were responsible for the delay in medical treatment. Without knowing for whom and why Hendrick is alleged to be responsible, or at least what types of employees Hendrick is alleged to be responsible, we cannot determine from the reports whether any of the experts are qualified to render an opinion as to those individuals. We also cannot determine from the reports whether the reports provide a fair summary of the expert's opinion regarding the applicable standard of care, breach, and causation as required under Section 74.351(r)(6).

We hold that the reports as to the vicarious liability claims against Hendrick are deficient. Hendrick's second issue is sustained.

When a report found sufficient by the trial court is found insufficient by an appellate court, the appellate court may remand the case to the trial court for consideration of whether to grant a thirty-day extension. *Leland*, 257 S.W.3d at 205, 207–08; *Conger*, 298 S.W.3d at 790. Because we have found the expert reports to be insufficient as to the vicarious liability claims against Hendrick, we reverse and remand this case to the trial court to determine whether to grant a thirty-day extension of the deadline for filing expert reports under Section 74.351(c) in order to allow appellees to address the deficiencies.

We reverse the judgment of the trial court and render judgment dismissing the direct liability claim. We remand this case to the trial court for a determination of attorney's fees to be awarded to Hendrick in connection with the dismissed claim and for a determination of whether to grant appellees a thirty-day extension in order to cure the deficiencies of the expert reports in connection with the vicarious liability claims.


JIM R. WRIGHT
CHIEF JUSTICE


January 26, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

8