In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-11-00446-CV
_____

### TEXAS DEPARTMENT OF TRANSPORTATION, Appellant

### V.

### RICHARD ZAPF, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HAZEL MARIE ZAPF, GARY ANGELLE, LOWELL ANGELLE, BARBARA ROGERS AND PATRICIA TOOLEY,
### Appellees

**On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-183,372**

### MEMORANDUM OPINION

In this wrongful death case, we are asked to determine whether the plaintiffs[1] met

their burden to produce legally sufficient evidence to show that the Texas Department of

Transportation possessed actual knowledge of tall grass growing in a highway median for

_____

[1]The plaintiffs who filed suit, and the appellees in this appeal, are Richard Zapf, individually and as personal representative of the Estate of Hazel Marie Zapf, Gary Angelle, Lowell Angelle, Barbara Rogers and Patricia Tooley. We will refer to them collectively as the Zapfs.

1

purposes of a recovery against it under the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.022(a), 101.025 (West 2011). Raising three issues, the Department appeals from a trial in which the jury found it to be ninety percent at fault for causing a collision. In issue one, the Department asserts that it owed no duty to Hazel Marie Zapf because the obstruction to her vision caused by tall grass in the median of a state highway was open and obvious. In issue two, the Department argues "there was no evidence that [Hazel] did not have actual knowledge of the visual obstruction caused by the tall grass, an essential element of the Zapf claim." In issue three, the Department asserts that there is no evidence that it had actual knowledge of the danger posed to Hazel by the tall grass.

We need not decide the Department's first two issues, as issue three is dispositive of the appeal. *See* Tex. R. App. P. 47.1 (opinions are required to address all issues that are "necessary to final disposition of the appeal"); *City of Corsicana v. Stewart*, 249 S.W.3d 412, 416 (Tex. 2008) (declining to address a broader issue, given the Court's conclusion that the City had not waived its immunity). We conclude the evidence before the jury regarding the Department's actual knowledge of the tall grass in the median was legally insufficient to support the jury's verdict. Because the Department was not shown to have had actual knowledge of the dangerous condition when the collision occurred, we reverse the judgment of the trial court and dismiss the Zapfs' claims for lack of jurisdiction.

Background

On an afternoon in August 2008, Hazel turned from a turning lane while attempting to cross the southbound lane of Highway 347 when a car driven by Roy Birdsong hit the car she was driving. The following morning, Hazel died from the injuries she had received in the collision. Deputy Tad Smith, the State trooper who investigated the accident, testified that "the grass in the median was a contributing factor to the crash[.]" At the trial's conclusion, the jury found both the Department and Hazel were negligent, allocating ninety percent of the fault to the Department and ten percent of the fault to Hazel.

Following the trial, the Department asked the trial court to grant a judgment notwithstanding the verdict, arguing that "[n]o evidence was introduced at trial that proved or reasonably inferred that [the Department] had actual knowledge of the tall grass." After rejecting the Department's motion for JNOV, the trial court sent a letter to the parties explaining its decision.[2] The trial court's letter, with respect to the

_____

[2]The Zapfs expressly relied on the trial court's letter and its explanation for its ruling in their brief; therefore, we note the essence of the trial court's explanation in the opinion. The trial court's letter mentions several Texas Supreme Court and intermediate appellate court decisions addressing legal sufficiency challenges in cases that involved governmental entities asserting legal sufficiency claims. The trial court's letter states that "there does not appear to be a clear line of demarcation between what evidence would be direct evidence or support a reasonable inference and that which would not." Explaining why it denied the Department's motion for JNOV, the trial court cited *Reyes v. City of Laredo*, 335 S.W.3d 605 (Tex. 2010); *City of Corsicana v. Stewart*, 249 S.W.3d 412 (Tex. 2008); *City of Dallas v. Thompson*, 210 S.W.3d 601 (Tex. 2006); *City of San Antonio v. Rodriguez*, 931 S.W.2d 535 (Tex. 1996); *City of Austin v. Leggett*, 257 S.W.3d

Department's no evidence challenge, referred the parties to the testimony of two witnesses, Debra Hurst, a Department mowing inspector, and David Mann, an individual who owned a business adjacent to the intersection where the collision occurred. In explanation of its ruling, the trial court said that "it would seem appropriate to this court to consider a premises owner as having actual awareness of a dangerous condition when it occurs regularly at relatively predictable intervals." Evidence supporting the jury's and trial court's inference that the condition occurred "at relatively predictable intervals[]" consisted of Hurst's testimony that she had requested a contractor to conduct two unscheduled mows of the median in a similar period the year before the accident, but had requested only one unscheduled mow in a similar period during 2008, the year Hazel's collision occurred. The trial court also noted that in 2008, the Department mowed the median at issue fewer times than during a similar period the prior year. According to the trial court,

> [f]rom this, the jury could conclude that [the Department] had actual knowledge of the approximate growth rate of the vegetation, the duration of effectiveness of regularly scheduled mowing and frequency with which the growth (between regularly scheduled mowing) created the dangerous condition requiring emergency cuts. From this, the jury could infer that [the Department] knew the vegetation height would constitute a visual obstruction on the date in question.

---

456 (Tex. App.—Austin 2008, pet. denied); and *Simons v. City of Austin*, 921 S.W.2d 524 (Tex. App.—Austin 1996, writ denied).

Having carefully reviewed all of the trial testimony, we do not agree that the evidence admitted at trial supports the inference that the Department actually knew the grass had grown to a sufficient height to obstruct the vision of persons driving on Highway 347 before Hazel's collision occurred. Evidence that a condition had occurred on multiple occasions before an accident, while sufficient to support a claim that the defendant should have known of the condition at issue, has been held to be legally insufficient evidence to show that a defendant possessed actual knowledge of the condition before an accident occurring on a later date. In *Stewart*, a car was swept away while attempting to cross a low-water crossing. 249 S.W.3d at 413. The Supreme Court noted that the Waco Court of Appeals had inferred actual knowledge from evidence that:

- the crossing sometimes flooded during heavy rains,

- the crossing design allowed water to flow over the crossing during heavy rains,

- the City had closed the crossing on previous occasions due to flooding;

- a study commissioned by the City had identified the crossing as a crossing that was susceptible to flooding,

- a former city council member had informed City personnel of dangerous conditions that arose at the crossing during light and heavy rains,

- the National Weather Service had issued severe weather warnings on the afternoon and night before the accident,

- the Department had closed a crossing located one mile away from the crossing at issue several hours before the accident, and

5

- a police officer encountered the heavy rain before being dispatched to assist the occupants of the car.

*Id.* at 414. Unanimously rejecting the Waco Court's holding that these circumstances constituted some evidence that a defendant had actual knowledge of the flooded crossing when the accident at issue occurred, the *Stewart* Court stated: "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *Id.* at 414-15. In our opinion, and in light of the Texas Supreme Court's holding in *Stewart*, evidence that the median required mowing outside the regular mowing schedule shows only that the Department should have known that tall grass could be present in the median; it is not evidence that the Department knew of its presence on the date at issue.

Here, it was undisputed that the presence of high grass in the median between the north and southbound lanes of Highway 347 was a condition that arose during the three weeks after the contractor last cut the grass in the median. When a condition develops over time, the *Stewart* Court explained: "Circumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *Id.* at 415 (citing *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002)); *see also City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 2006). Distinguishing *Rodriguez*, the *Stewart* Court noted that the evidence before the court in *Rodriguez* revealed that a particular city employee—the person in charge of the building at issue—

6

knew the building had a leaky roof and knew it was raining. *Stewart*, 249 S.W.3d at 415 (citing *Rodriguez*, 931 S.W.2d at 537). Contrasting the evidence before it with the evidence in *Rodriguez*, the *Stewart* Court noted that: "Plaintiffs have not identified any City official likely to have made a similar connection." *Id*. In the case before us, no evidence was admitted during the trial showing that a Department employee, prior to the accident, had seen the grass growing to a hazardous height after it had last been cut. Additionally, no Department employee acknowledged knowing, during the three-week period before Hazel's collision, that the grass had grown to a sufficient height that it presented a hazard to drivers using the turning lane.

The facts before us are analogous to those before the Court in *Stewart*. Hurst, the Department's inspector over the contractors the State hired to mow the grass median separating Highway 347, never acknowledged that she was aware during the three week period before the collision—the period following the last cut of the median—that the grass had grown to a height sufficient to obscure the view of drivers on Highway 347. Instead, Hurst's testimony reflects that she observed tall grass in the median of Highway 347 on August 21, 2008, the day after Hazel's collision; at that time, she asked the contractor to perform an emergency spot mow. While Hurst acknowledged that the same area had required four emergency spot mows between May and September of the previous year, she was never asked whether she realized before Hazel's August 20, 2008, collision that the grass had grown to an unacceptable height after it was last cut. In

summary, Hurst's testimony does not show that she knew, before Hazel's collision, that the grass in the median presented a hazard to drivers using the turning lane.

The Zapfs also rely on the testimony of Mann to support their claim that the Department had actual knowledge of the dangerous condition at issue. Mann owns D&D Automotive and Transmissions, which is across the road from the median where Hazel's collision occurred. According to Mann, he contacted the Department about the height of the grass in the median more than twenty times since 2004. In late July 2008, Mann called the Department complaining about tall grass in the median after three wrecks occurred in one day. Nevertheless, the parties both acknowledge that the median was last cut on July 28 and 29, 2008, as part of the regularly scheduled maintenance performed in that area. Importantly, Mann did not testify that he called to report problems with the height of the grass in the median at issue after it was mowed in late July. Moreover, the remainder of Mann's testimony does not show that the Department knew that the grass in the median was too high before Hazel's collision. Although Mann suggested that the tall grass allowed police officers to hide in the median "[w]here they can issue more speeding citations[,]" nothing established that he had knowledge of the Department's policies. As a result, his opinion that allowing the grass to grow to help another State agency's function is nothing more than unsupported opinion and provides no support for the verdict. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). "[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a

conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id.* at 818; *see also Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009) ("Conclusory or speculative opinion testimony is not relevant evidence because it does not tend to make the existence of material facts more probable or less probable.").[3] In *Hammerly Oaks, Inc. v. Edwards*, the Texas Supreme Court observed that "the trier of fact may draw inferences, but only reasonable and logical ones[,]" and noted that the evidence relied on may not just be "'meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.'" 958 S.W.2d 387, 392 (Tex. 1997) (quoting *Blount v. Bordens, Inc.* 910 S.W.2d 931, 933 (Tex. 1995)); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968) (recognizing that "a vital fact may not be established by piling inference upon inference").

_____

[3]The Zapfs cite two of our opinions in support of their argument that Mann's opinion had probative value in proving the Department's knowledge of the alleged dangerous condition, *American Interstate Insurance Company v. Hinson*, 172 S.W.3d 108, 119 (Tex. App.—Beaumont 2005, pet. denied), and *Woodlands Land Development Company, L.P. v. Jenkins*, 48 S.W.3d 415, 423 (Tex. App.—Beaumont 2001, no pet.). In *Hinson*, we held that an expert's opinion based on a drug test regarding intoxication was not conclusive where there was other evidence that the plaintiff was not intoxicated. *Hinson*, 172 S.W.3d at 120. In *Jenkins,* we held the evidence to be legally insufficient to support the jury's findings because the testimony at issue failed to prove the defendant's actual knowledge that statements were false. *See Jenkins*, 48 S.W.3d at 426-28; *see also* Tex. Bus. & Com. Code Ann. § 27.01(d) (West 2009). Neither case supports the Zapfs' argument that Mann's testimony has probative value to show that before the collision, the Department possessed actual knowledge of the condition at issue.

In Mann's case, nothing shows that Mann's opinion was based on something he learned from the Department as opposed to his impression from having seen police issue tickets in the area around his business. We conclude that Mann's opinion that the Department chose to maintain the grass in the median to assist the Department of Public Safety in issuing tickets constitutes unsupported opinion; as such, it is no evidence that the Department knew the dangerous condition arose in the three weeks before Hazel's collision.

The Zapfs also rely on the testimony of Brian Dodge, the Department's maintenance section supervisor for the area that includes the portion of Highway 347 at issue. During the trial, Dodge generally acknowledged that grass grows between regularly scheduled mows; that areas under his supervision needed spot mows between regularly scheduled mows; and that he and Hurst, at some undefined time before the accident, discussed that some areas, on occasion, needed mowing more often than called for by the regular mowing schedule. Dodge acknowledged that spot mows are performed when grass reaches a height that can present a danger to the travelling public, and that the median at issue had been spot mowed on prior occasions. Nevertheless, Dodge never acknowledged that he or other Department employees were aware that the area at issue needed a spot mow after being mowed in late July. Instead, Dodge testified that he had no knowledge of the height of the grass on the day Hazel's accident occurred. In summary,

Dodge's testimony is not evidence that the Department had actual knowledge of the dangerous condition—the tall grass in the median—on the date of Hazel's collision.

Major Roy Birdsong, an employee of the Jefferson County Sheriff's Department, also testified about the height of the grass during the time periods at issue. He explained that he collided with Hazel's car when she turned in front of him. According to Birdsong, he traveled the highway daily because he lived in the area. Birdsong testified that the grass in the median "had been tall for a week or so prior to [the collision]." According to Birdsong, the medians were notorious for having high grass. However, Birdsong also testified that he never advised the Department of the dangerous condition in the median before the collision occurred.

Essentially, the Zapfs argue that the fact that the grass could grow and obscure the vision of drivers was a known condition. However, the Texas Supreme Court has distinguished between the requirements for constructive knowledge and actual knowledge in Tort Claims Act cases, stating that "the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006). We conclude that the evidence admitted in the Zapfs' trial is legally insufficient to show that the Department had actual knowledge that tall grass had grown to a height to obstruct the vision of drivers using the median at issue. As a result, we are required to sustain issue three, reverse the trial court's

11

judgment, and order the Zapfs' action against the Department to be dismissed for lack of jurisdiction.

REVERSED AND DISMISSED FOR LACK OF JURISDICTION.


_____
HOLLIS HORTON
Justice


Submitted on October 4, 2012
Opinion Delivered January 17, 2013
Before McKeithen, C.J., Gaultney and Horton, JJ.